## CASE NO. 17-6365

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

### UNITED STATES OF AMERICA,

*Plaintiff- Appellee,*

**vs.**

### MARCUS PRICE,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
2:16CR0087

---

## APPELLANT MARCUS PRICE'S BRIEF

---

Respectfully submitted,

/s/ Kevin M. Cafferkey_____
**KEVIN M. CAFFERKEY, (#0031470)**
Attorney for Defendant/Appellant
55 Public Square
2100 Illuminating Building
Cleveland, OH 44113
(216) 363-6014
kmcafferkey@hotmail.com

# **TABLE OF CONTENTS**

PAGE NO.

TABLE OF CONTENTS......................................................................................i

TABLE OF CASES, STATUES, AND OTHER AUTHORITIES .............................................ii

STATEMENT IN SUPPORT OF ORAL ARGUMENT...........................................................1

STATEMENT OF JURISDICTION.......................................................................2

STATEMENT OF THE ISSUES ..........................................................................4

    I.    WHETHER THE JURY ERRED IN FINDING THAT THERE WAS A CONSPIRACY IN THIS CASE.

    II.    WHETHER THE DISTRICT COURT ERRED IN DETERMINING THE DRUG QUANTITY AT SENTENCING.

    III.    WHETHER THE DISTRICT COURT ERRED WHEN IT DENIED DEFENSE COUNSEL'S EMERGENCY MOTION TO WITHDRAW AND THE DEFENDANT'S MOTION FOR NEW COUNSEL.

STATEMENT OF THE CASE ..............................................................................5

SUMMARY OF THE ARGUMENT.......................................................................32

ARGUMENT..............................................................................................33

CONCLUSION............................................................................................44

CERTIFICATE OF COMPLIANCE.....................................................................46

CERTIFICATE OF SERVICE..........................................................................47

APPELLANT'S DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS.................48

# <u>TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES</u>

**Cases**

*Brandon v. Blech*, 560 F.3d 536 (6th Cir. 2009) ....................................41

*Jackson v. Virginia*, 443 U.S. 307(1979) ................................................33

*United States v. Baro,* 15 F.3d 563 (6th Cir. 1994) ...............................36

*United States v. Boone*, 437 F.3d 829 (8th Cir. 2006) ......................41, 42

*United States v. Bostic,* 480 F.2d 965 (6th Cir. 1973) ...........................34

*United States v. Bourjaily,* 781 F.2d 539 (6th Cir. 1986) .......................34

*United States v. Cole*, 988 F.2d 681 (7th Cir. 1993) .........................41, 42

*United States v. Davis*, 177 F.3d 552 (6th Cir. 1999) ............................33

*United States v. Gibbs,* 182 F.3d 408 (6th Cir. 1999) ............................34

*United States v. Hall*, 35 F.3d 310 (7th Cir. 1994) ................................42

*United States v. Henley*, 360 F.3d 509 (6th Cir. 2004) ..........................35

*United States v. Jackson*, 470 F.3d 299 (6th Cir.2006) .........................38

*United States v. Keszthelyi*, 308 F.3d 557 (6th Cir. 2002) .....................36

*United States v. Kincaide*, 145 F.3d 771 (6th Cir. 1998) .......................33

*United States v. Long*, 190 F.3d 471 (6th Cir. 1999) .........................35, 36

*United States v. McCutchen*, 992 F.2d 22 (3d Cir.1993) .......................38

*United States v. Medina,* 992 F.2d 573 (6th Cir. 1993) ..........................36

*United States v. Olsen*, 537 F.3d 660 (6th Cir. 2008) ............................35

*United States v. Salgado*, 250 F.3d 438 (6th Cir. 2001) .........................33

*United States v. Scalia*, 993 F.2d 984 (1st Cir.1993) ...............................................38

*United States v. Spearman,* 186 F.3d 743 (6th Cir. 1999) ......................................34

*United States v. Walton,* 908 F.2d 1289 (6th Cir. 1990) ........................................36

*United States v. Ward,* 68 F.3d 146 (6th Cir. 1995) ...............................................36

*United States v. West,* 948 F.2d 1042 (6th Cir. 1991) ............................................36

*United States v. Walker*, 915 F.2d 480 (9th Cir. 1990) ..........................................41

**Other**

Federal Rule of Appellate Procedure 34.................................................................. iv

Sixth Circuit Rule 32.............................................................................................46

Sixth Circuit Rule 34.............................................................................................. iv

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Sixth Circuit Rule 34(a), Appellant Marcus Price requests an oral argument in this matter. The Appellant was sentenced to 168 months imprisonment, a very significant sentence in this case. Due to the length of imprisonment and the importance of the legal issues presented herein, the Defendant hereby requests an oral argument to better effectuate his Sixth Amendment right to counsel on appeal.

## STATEMENT OF JURISDICTION

Marcus Price filed a direct appeal from a criminal judgment entered against him on November 15, 2017 by the Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee in case number 2:16-CR-00087. (Judgment, R. 114, PAGE ID 1195-1202)(Notice, R. 116, PAGE ID 1207). Original jurisdiction for this matter was established pursuant to a four (4) count criminal Indictment issued on August 9, 2016 for violating 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(B) Conspiracy to Distribute and Possession With the Intent to Distribute 280 Grams or More of Cocaine Base, violating 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C) Distribution of a Quantity of Cocaine Base, violating 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C) Distribution of a Quantity of Cocaine Base, and violating 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B) Possession With Intent to Deliver 28 Grams or More of Cocaine Base. (Indictment, R. 3, PAGE ID 7-9).

On June 30, 2017, Marcus Price was found guilty by a jury on all four (4) counts of the Indictment. (Verdict, R. 97, PAGE ID 435-7). Price was sentenced to one hundred and sixty eight (168) months imprisonment on November 6, 2017. (Sent. Trans., R. 133, PAGE ID 2172). Price timely filed a Notice of Appeal on November 15, 2017. (Notice, R. 116, PAGE ID 1207). The United States District Court for the Eastern District of Tennessee exercised original jurisdiction pursuant

to 18 U.S.C. § 3231. This Honorable Court has Appellate jurisdiction of Marcus Price's direct appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.  WHETHER THE JURY ERRED IN FINDING THAT THERE WAS A CONSPIRACY IN THIS CASE.

II.  WHETHER THE DISTRICT COURT ERRED IN DETERMINING THE DRUG QUANTITY AT SENTENCING.

III.  WHETHER THE DISTRICT COURT ERRED WHEN IT DENIED DEFENSE COUNSEL'S EMERGENCY MOTION TO WITHDRAW AND THE DEFENDANT'S MOTION FOR NEW COUNSEL.

## STATEMENT OF THE CASE

On August 9, 2016, a four (4) count criminal Indictment was filed against Marcus Isaiah Price in the United States District Court for the Eastern District of Tennessee case number 2:16-CR-00087. (Indictment, R. 3, PAGE ID 7-9). The Indictment alleged the following four Counts: Count 1: From March 1, 2014 through August 9, 2016, Price conspired to distribute and possessed with the intent to distribute 280 grams or more of cocaine base; Count 2: On June 2, 2016, Price distributed a quantity of cocaine base; Count 3: On July 8, 2016, Price distributed a quantity of cocaine base; and on July 12, 2016 Price possessed with the intent to distribute 28 grams or more of cocaine base. (Indictment, R. 3, PAGE ID 7-9).

On September 6, 2016, Marcus Price appeared before Magistrate Judge Clifton L. Corker for his initial appearance.  (Entry, R. 6, PAGE ID 14).  Mr. Price plead not guilty and was assigned Timothy Hudson as his counsel.  *Id*.  On October 4, 2016, Attorney Hudson moved to withdraw from the case due to a conflict of interest.  (Motion, R. 15, PAGE ID 33). On October 5, 2016, the Court granted Attorney Hudson's Motion and Attorney Angela Morelock was appointed to represent Mr. Price.  (Order, R. 19, PAGE ID 38).

On March 9, 2017, Mr. Price filed a pro se Motion for Removal of Counsel that was heard by Magistrate Judge Clifton L. Corker. (Motion, R. 39, PAGE ID 70). Counsel stated that she had six (6) in-person meetings with Mr. Price in the

last five (5) months, totaling over fifteen (15) hours of client consultation. (Motion Trans., R. 126, PAGE ID 1558). The Court found that there were no irreconciliable differences that would prevent Ms. Morelock from representing Mr. Price at that time. *Id*. at PAGE ID 1567.

On March 6, 2017, United States Magistrate Judge Corker set the following dates and deadlines, Pretrial Motion deadline of May 5, 2017, Response deadline of May 19, 2017, Pretrial Conference/Motion hearing for May 22, 2017 and a Jury Trial was scheduled for June 29, 2017 before District Judge J. Ronnie Greer. (Minutes, R. 37, PAGE ID 66).

## I.    PRETRIAL MOTIONS.

On May 5, 2017, the defense filed four (4) Motions with supporting Memorandum(s), including: (1) Motion to Suppress Jail Calls (Motion, R. 44, PAGE ID 76-77)(Brief, R. 49, PAGE ID 89-93); (2) Motion to Exclude Prior Convictions (Motion, R. 47, PAGE ID 83-5); (3) Motion to Suppress Statement by Defendant (Motion, R. 48, PAGE ID 86-88); and (4) Motion to Dismiss Counts One, Two and Three of the Indictment (Motion, R. 50, PAGE ID 96-7)(Brief, R. 51, PAGE ID 98-117).

The government filed an Information to Establish Prior Conviction pursuant to 21 U.S.C. § 851(a)(1) on May 8, 2017 notifying Mr. Price of the United States' intention to seek increased punishment as a result of his two (2) prior convictions.

(Information, R. 58, PAGE ID 139-140). The prior convictions were for possession with the intent to sell marijuana on August 9, 2012 and his possession of cocaine with the intent to distribute on November 18, 2014. (Information, R. 58, PAGE ID 139-140).

The government filed a Response in Opposition to the Defendant's Motion to Suppress Jail Calls (Response, R. 59, PAGE ID 142-144); Response in Opposition to the Defendant's Motion to Exclude Prior Convictions (Response, R. 60, PAGE ID 145-6); Response in Opposition to the Defendant's Motion to Suppress Statement (Response, R. 61, PAGE ID 147-156); and Response in Opposition to the Defendant's Motion to Dismiss Counts One, Two and Three of the Indictment (Response, R. 62, PAGE ID 157-160).

Magistrate Judge Clifton F. Corker presided over the oral hearing on the Defendant's Motions on May 22, 2017. (Motion Trans., R. 91, PAGE ID 337). Johnson City Police Department Investigator Thomas Garrison and FBI Special Agent Michelle Yarona provided testimony. (List, R. 65, PAGE ID 163). Mr. Price's signed *Miranda* waiver that was executed prior to his July 12, 2016 statement was introduced on the record. *Id*. Investigator Garrison testified that he never made any promises to Mr. Price to induce his cooperation on July 12, 2016. (Motion Trans., R. 91, PAGE ID 395-6). Agent Yarona did not have any background on the case and was a witness to Mr. Price's interview on July 12,

7

2016. *Id*. at PAGE ID 401. She described their conversation as "casual, relaxed and almost friendly." *Id*. Agent Yarona testified that she did not hear Investigator Garrison make any promises to the Defendant. *Id*. at PAGE ID 404. The parties informed the Court that the Motion to Suppress Jail Calls and the Motion to Exclude the Prior Convictions could be decided on the briefs. *Id*. at PAGE ID 410-11. The defense provided an oral argument on its Motion to Dismiss, arguing that the government failed to establish there was a conspiracy based upon the evidence provided in discovery. *Id*. at PAGE ID 417-8. The hearing was concluded after a few housekeeping matters were addressed.

On May 30, 2017, Magistrate Judge Corker filed a written Order granting the Defendant's Motion to Suppress Jail Calls as moot because the government indicated that it did not intent to introduce the Defendant's jail calls at trial. (Order, R. 66, PAGE ID 165). Magistrate Judge Corker made a recommendation to deny the Defendant's Motion to Suppress the statement he gave to law enforcement opining that "under the totality of circumstances, there was nothing that officers did that would even come close to crossing any constitutional line." (Recommendation, R. 67, PAGE ID 169-170). Magistrate Judge Corker made an Order deferring the ruling on the Defendant's Motion to exclude the introduction of his prior convictions during trial for the District Court to address at trial. (Order, R. 68, PAGE ID 171-3). The government indicated that it did not intend to

introduce evidence of Defendant's prior convictions in its case-in-chief or at all, unless Defendant elects to testify. *Id*. at PAGE ID 172. The parties agreed to work together to address the fact that Mr. Price was on Probation which resulted in the search of his residence on July 12, 2016. *Id*. Lastly, Magistrate Corker made a Recommendation to deny the Defendant's Motion to Dismiss Counts One, Two, and Three of the Indictment opining that the Motion was outside of the scope of Fed. R. Crim. P. 12(b)(1) and ruling on it would be contrary to established Supreme Court and Sixth Circuit precedent. (Recommendation, R. 69, PAGE ID 174-5). On June 21, 2017, United States District Judge J. Ronnie Greer adopted and approved the recommendations and Orders of Magistrate Corker. (Order, R. 80, PAGE ID 195). Neither party objected to the Magistrate's Order or the Judge's Order.

On June 20, 2017, Marcus Price sent a four (4) page pro se letter to the Court explaining why he had chosen to go to trial. (Letter, R. 79, PAGE ID 190-3).

On June 21, 2018, counsel for Mr. Price, Angela Morelock, filed an Emergency Motion to Withdraw as Counsel five (5) days prior to trial, along with a Memorandum in Support filed under seal. (Motion, R. 81, PAGE ID 196). Attorney Morelock argued that, "Counsel can no longer represent Mr. Price because he refuses to assist in his own defense therefore counsel is unable to

provide adequate representation and the attorney/client relationship is irretrievable broken." (Memo, R. 85, PAGE ID 207). Further, "After review of Mr. Price's letter dated June 15, 2017 and listening to the recorded jail call from June 20, 2017, counsel has no choice but to seek an order allowing her to withdrawal as counsel in this matter." *Id*. at PAGE ID 211.

The Court scheduled Attorney Morelock's Motion for an oral hearing on June 23, 2017. (Motion Trans., R. 129, PAGE ID 1622). Attorney Morelock provided her own testimony, as well as, the testimony from the Investigator she had retained on behalf of Mr. Price, Tom Farrow. *Id*. at PAGE ID 1624. The Court engaged in extensive questioning of Mr. Price, asking him to specify why he didn't trust his counsel and what other Motions or investigative work Mr. Price would like his counsel to perform prior to trial. Mr. Price responded:

> SHE'S TELLING YOU THAT THE TRUST IS GONE, THE BREACH OF TRUST IS BEYOND REPAIR. I'VE BEEN STATING THAT, AND I JUST DON'T UNDERSTAND WHY I CANNOT HAVE THE NEW COUNSEL; AND LIKE THAT'S ALL I'M ASKING FOR, THAT'S ALL I'M ASKING FOR.

*Id*. at PAGE ID 1663. After hearing all of the arguments from both defense counsel and the Defendant, the Court denied the Emergency Motion to Withdraw as Counsel finding there was no basis to appoint new counsel. *Id*. at PAGE ID 1667-8.

10

Prior to trial, the AUSA placed the previous plea offer(s) to Mr. Price on the record during the June 23, 2016 hearing. (Motion Trans., R. 129, PAGE ID 1671). The original offer was to have Mr. Price plead guilty to Count 1, conspiracy to distribute cocaine base, pursuant to a plea agreement with a sentencing range of ten (10) years to life imprisonment. *Id*. There was a second plea offer made after the government filed the § 851 enhancement, offering Mr. Price to plead guilty to Count 4, possession of cocaine base without the enhancement, pursuant to a plea agreement with a sentencing range of five (5) to forty (40) years imprisonment. *Id*. at PAGE ID 1671-2. Neither plea offer required Mr. Price to cooperate. *Id*. The plea agreement did require Mr. Price to acknowledge that he was a career offender. *Id*. at PAGE ID. 1675. Defense counsel had a second attorney, James Varner, provide a second opinion to the Defendant as well. *Id*. at PAGE ID 1680. Mr. Price indicated on the record that it was his decision to not accept the plea agreement(s). *Id*. at PAGE DI 1683. After Mr. Price rejected the plea offers, the Court adjourned the case until the start of trial.

## II.    TRIAL.

On June 29, 2017, Mr. Price's two (2) day jury trial began before the Honorable J. Ronnie Greer. (Trial, R. 131, PAGE ID 1721). The government introduced the following witnesses: Johnson City Police Department ("JCPD") Investigator Thomas Garrison, TBI Forensic Scientist Jacob White, Confidential

Informant Marcus Gregory, JCPD Investigator Michael Barron, TBI Forensic Scientist Eric Stoner, and FBI Task Force Officer Matthew Gryder. (Witness List, R. 95, PAGE ID 433). The government also introduced fourteen (14) exhibits. (Exhibit Log, R. 96, PAGE ID 1572). Investigator Thomas Garrison (now Sergeant) was the Narcotics Investigator for the Johnson City Police Department Narcotics Unit in July of 2016 and was the United States' advisory witness at trial. *Id*. at PAGE ID 1734, 1746. Investigator Garrison provided background testimony regarding his experience in the JCPD Narcotics Unit and their investigation into Marcus Price.

### A.    JUNE 1, 2016 CONTROLLED PURCHASE.

Investigator Garrison testified that on June 1, 2016, Informant Marcus Gregory indicated that he could buy crack cocaine from "Magic" aka Marcus Price. (Trial, R. 131, PAGE ID 1765). Gregory was on probation during this time frame. *Id*. at PAGE ID 1837. At approximately 4:00 p.m., Investigator Garrison and Investigator Mark Hollis met with Marcus Gregory to set up a controlled buy. *Id*. at PAGE ID 1766. Gregory was outfitted with an audio transmitter, a video recording device, and given buy money, i.e. pre-recorded funds. *Id*. at PAGE ID 1767. Gregory also showed Investigator Garrison some text messages from "Magic," phone number 423-483-8381 stating:

INFORMANT:    WHAT TIME YOU THINK BRO.

12

| MAGIC: | MEET ME AT CRIB. |
| INFORMANT: | WHEN NOW. |
| MAGIC: | YEA. |

****

| MAGIC: | HOW FAR. |
| INFORMANT: | GETTING OFF THE HIGHWAY NOW BRO LIKE 5. |

*Id*. at PAGE ID 1770-1; (R. 51-1).

Investigators Garrison and Hollis followed Gregory to the Terrace Court Apartments in Johnson City where they arrived at 4:12 p.m. *Id*. at PAGE ID 1772, 1774. Gregory completed the recorded buy in less than three (3) minutes with a man that arrived in a white Lexus, registered to Marcus Price, with an address on Terrace Court. *Id*. Gregory had purchased approximately a quarter ounce of crack cocaine for $300 which was turned over to the Investigators at the conclusion. *Id*. at PAGE ID 1775. Investigator Garrison indicated that he patted down Gregory before and after the controlled purchase.  *Id*. at PAGE ID 1761. Investigator Garrison identified Marcus Price as the seller from the video of the transaction. *Id*. at PAGE ID 1776. Although the transaction was video recorded, the actual transaction could not be seen on the video. *Id*. at PAGE ID 1849.

Special Agent Forensic Scientist Jacob White from the Tennessee Bureau of Investigation Regional Crime Laboratory analyzed June 1, 2016 controlled

purchase substance on September 29, 2016. *Id*. at PAGE ID 1792. Agent White performed two (2) tests on the substance, the presumptive test indicated the presence of cocaine and the confirmatory test indicated the presence of cocaine base. *Id*. at PAGE ID 1794-5. In addition, Agent White obtained a net weight of 5.65 grams. *Id*. at PAGE ID 1796.

### B.    JULY 8, 2016 CONTROLLED PURCHASE.

Investigator Garrison testified that on July 8, 2016, he and Investigator Hollis met with Gregory to conduct another controlled buy. (Trial, R. 131, PAGE ID 1765). Johnson City Investigator and FBI Task Force Officer Matthew Gryder was also present on July 8, 2016. *Id*. at PAGE ID 1962. Gregory was outfitted with an audio transmitter, a video recording device, and given buy money. *Id*. at PAGE ID 1798. Gregory also showed Investigator Garrison some text messages from "Magic," phone number 423-483-8381 stating:

> MAGIC:          WHAT UP FOO.
>
> INFORMANT:      LOL, WHAT'S GOOD BRO?
>
> MAGIC:          COOLIN JUS LETTIN' YOU
>                 KNOW.
>
> INFORMANT:      HOLD ME A WHOLE ONE FIRST
>                 THING IN THE MORNING.

*Id*. at 1799, 1964; (R. 51-4). Prior to the controlled buy, a phone call was placed by Gregory to "Magic" at 423-483-8381 with an agreed buy location at the mall in Johnson City. *Id*. at PAGE ID 1801-2.

Investigators Hollis and Garrison followed Gregory to the mall parking lot. *Id*. Investigator Garrison indicated that he patted down Gregory before and after the controlled purchase.  *Id*. at PAGE ID 1842. Investigator Garrison identified Marcus Price as the individual driving a white Lexus up next to Gregory's vehicle in the parking lot. *Id*. at PAGE ID 1804. Gregory got out and leaned into the passenger side window of the Lexus, talked for several minutes, and then left. *Id*. Price got out of his vehicle and went into the mall. *Id*. at PAGE ID 1805. Gregory returned and had purchased approximately an ounce of crack cocaine for $1,200, which was turned over to the Investigators. *Id*. at PAGE ID 1805. Gregory was compensated as well for the purchase, earning $200 dollars.  *Id*. at PAGE ID 1833, 1874. Although the transaction was video recorded, the actual transaction  of the drugs cannot be seen on the video. *Id*. at PAGE ID 1851.

Special Agent Forensic Scientist Erica Stoner from the Tennessee Bureau of Investigation Regional Crime Laboratory analyzed the July 8, 2016 controlled purchase substance. *Id*. at PAGE ID 1936. Agent Stoner performed two (2) tests on the substance, the presumptive test indicated the presence of cocaine and the confirmatory test indicated the presence of cocaine base. *Id*. at PAGE ID 1938-

1940. In addition, Agent White obtained a net weight of 26.02 grams. *Id*. at PAGE ID 1940.

### C.    JULY 12, 2016 CONTACT WITH MARCUS PRICE.

On July 12, 2016, Investigator Garrison made contact with Marcus Price at his Probation Officer Kelly Jacobs' office in Johnson City around 3:00 p.m. (Trial, R. 131, PAGE ID 1811). Marcus Price arrived in the same white Lexus that Investigator Garrison observed on the two prior dates, June 1, 2016 and July 8, 2016. *Id*. at PAGE ID 1812. Investigator Garrison and Task Force Officer Gryder told Mr. Price that he was under investigation for selling crack cocaine and that they had been buying from him. *Id*. at PAGE ID 1811, 1964. The Officers asked Mr. Price to cooperate. *Id*. Price replied that he doesn't recall selling any drugs and declined to cooperate. *Id*. at PAGE ID 1812. The white Lexus was searched and no illegal substances were found but the Officers did find approximately $600 in cash. *Id*. at PAGE ID 1844.

Mr. Price was detained and arrested by Investigator Garrison for selling crack-cocaine and transported down to Washington County Jail. *Id*. at PAGE ID 1813. Investigator Garrison testified that approximately half way through the transit, Mr. Price stated that if he let him smoke a cigarette, then he would talk. *Id*. at PAGE ID 1814. As a result, Investigator Garrison drove Mr. Price to the FBI Office in lieu of the County jail. *Id*. FBI Agent Michelle Yoama and Investigator

Garrison let Mr. Price smoke a cigarette and then took Mr. Price to an interview room. *Id*. at PAGE ID 1815. Price signed a written *Miranda* waiver at approximately 5:35 p.m. *Id*. at PAGE ID 1832.

According to Investigator Garrison, Price allegedly identified his source of supply, a man in Atlanta, and described three (3) past transactions. *Id*. at PAGE ID 1819. Price allegedly stated that he was fronted eight (8) ounces of crack cocaine from the supplier in Atlanta and owed him $8,000. *Id*. at PAGE ID 1819, 1821. According to Investigator Garrison, Mr. Price also identified purchasers of his narcotics, including Gregory. *Id*. at PAGE ID 1822-3. Investigator Garrison asked Mr. Price for permission to search his three (3) cell phones and received written permission/consent, including a phone with the number 423-483-8381. *Id*. at PAGE ID 1824. Other than Price's alleged statement to Investigator Garrison, there was no other evidence to support any additional drug sales by Mr. Price. *Id*. at PAGE ID 1827.

### D. July 12, 2016 SEARCH OF MARCUS PRICE'S RESIDENCE.

Investigator Michael Barron worked for the the Johnson City Police Department for over twenty (20) years and in the summer of 2016, he was assigned to the Special Investigations Squad. (Trial, R. 132, PAGE ID 1902). Investigator Barron testified that on July 12, 2016, he assisted in a search of an apartment located at 907 Antioch Road in Johnson City with a Probation Officer, Sergeant

Eric Daugherty, Investigator Mark Hollis, and Task Force Officer Matt Gryder. *Id*. at PAGE ID 1904-5, 1965. They entered the locked residence with a key and the search lasted approximately thirty (30) minutes. *Id*. Officer Gryder testified that he had gotten the key from Mr. Price at his Probation Officer's office. *Id*. at PAGE ID 1964. The Officers were outside of the residence for approximately 5-10 minutes prior to entering. *Id*. at PAGE ID 1952. During that time, someone that had been sleeping on the couch or otherwise had been in the residence could have left out the backdoor and been completely undetected by the Officers. *Id*. at PAGE ID 1953.

Investigator Barron testified that upon entering and beginning their search, he discovered, laying on the floor, underneath the coffee table, a plastic bag that had a significant amount of narcotics in it. *Id*. at PAGE ID 1906-7. Photographs were taken during the search, including a luggage tag with Price's name on it and a destination of Atlanta. *Id*. The search was also videotaped by the body camera of Investigator Hollis. *Id*. at PAGE ID 1907. Plastic bags were recovered from the bathroom upstairs during the search, digital scales were recovered, and a black soft sided case with alleged narcotics in it was also collected from the residence. *Id*. at PAGE ID 1909, 1911. The Officers also collected a shirt they believed had been worn by Mr. Price during the second controlled purchase and a spiral notebook with names and phone numbers in it. *Id*. at PAGE ID 1916.

18

Special Agent Forensic Scientist Erica Stoner analyzed the items collected from the July 12, 2016 residence search. *Id*. at PAGE ID 1914. Agent Stoner identified 111.20 grams of what she described as "damp or wet rock like substance" and 5.5 grams of a white powder and not rock like substance. *Id*. at PAGE ID 1940-1941. Agent Stoner tested the 111.20 grams through two (2) tests and determined that the substance was cocaine base and tested the 5.5 grams of white powder and determined it to be cocaine base. *Id*. at PAGE ID 1946, 1948.

Agent Stoner testified that that she also weighed an additional rock like substance that weighed 109.41 grams and three (3) additional bags that had a rock like substance that had a gross weight of 25.84 grams. *Id*. at PAGE ID 1942-3. Agent Stoner did not perform a chemical analysis on those rock like substances, which totaled 135.25 grams. *Id*. at PAGE ID 1943. Agent Stoner testified that the second bags was visually consistent but further stated:

> YOU KNOW, I DID NOT TEST THE SECOND ONE, SO I CAN'T, YOU KNOW, SAY THAT IT WAS OR WASN'T ANYTHING BECAUSE I DID NOT PERFORM ANY, ANY SCIENTIFIC ANALYSIS ON THAT.

*Id*. at PAGE ID 1944. No tests were performed to determine what the substance or substances was in the bags totaling 135.25 grams.

## E.    INFORMANT MARCUS GREGORY.

Marcus Gregory testified that he goes by the nickname "Mo" and that at the time of the trial, he was being held in the Greenville Detention Center with federal pending charges for conspiracy to sell crack cocaine.  (Trial, R. 131, PAGE ID 1854). Gregory has multiple prior felony convictions. *Id*. at PAGE ID 1855. Gregory testified that he had known Marcus Price aka "Magic" for a few years and that they met and became friends while they were incarcerated.  *Id*. at PAGE ID 1856. Gregory testified that after he was arrested on new charges, Investigator Garrison approached him to see if he wanted to cooperate and make buys of crack cocaine for the government.  *Id*. at PAGE ID 1858. Gregory identified the text messages he allegedly had with Mr. Price and identified the two (2) controlled buys he conducted on June 1, 2016 and July 8, 2016 with Mr. Price. *Id*. at PAGE ID 1858-1872.

Gregory had been a confidential information since approximately the summer of 2016 through the fall of 2016.  *Id*. at PAGE ID 1874. Gregory recalled making at least three (3) controlled purchases as a confidential informant where he was paid, making $200 for each purchase.  *Id*. at PAGE ID 1875. In August or September of 2016, Gregory's services as a confidential informant were terminated because he tested positive for marijuana during a drug test as a condition of his Probation.  *Id*. at PAGE ID 1837-8.  As a result, a warrant was issued for his arrest

because he was on the run from law enforcement. *Id*. at PAGE ID 1839. He was eventually arrested a few months later.

### F.    CELL PHONES ANALYSIS.

Task Force Officer Matt Gryder used a system called Cellebrite as a mobile data forensic tool to analyze Mr. Price's three (3) cell phones he had given to Investigators on July 12, 2016. (Trial, R. 132, PAGE ID 1965-6).  The cell phones and pass codes were provided by Mr. Price. *Id*. at PAGE ID 1966. Officer Gryder analyzed and extracted the data from three (3) phones, a Samsung flip phone, a Samsung Galaxy, and an I-phone. *Id*. at PAGE ID 1967. Officer Gryder also analyzed 10,090 text messages from the I-phone extraction and provided testimony as to what his interpretation was as to their content pursuant to an extensive report an demonstrative aids. *Id*. at PAGE ID 1970-2007.

Officer Gryder admitted that he does not know whose hands the phones were in at the time of any of the text messages he testified about.  *Id*. at PAGE ID 2009.   Further, Officer Gryder had no other evidence to support any drug transactions occurring that he interpreted from his cell phone analysis. *Id*.

### III.   CONCLUSION OF TRIAL.

The United States of America rested its case and the defense indicated that it did not intend to call any witnesses or introduce any additional exhibits.  (Trial, R. 132, PAGE ID 2012). Marcus Price was questioned by the Court and indicated that

it was his decision to not testify. *Id*. at PAGE ID 2014. Further, Mr. Price did indicate that he wanted to call two (2) witnesses on his behalf, Christopher Williams and Reginald Smith. *Id*. at PAGE ID 2015. Defense counsel indicated that both of those potential witnesses were incarcerated and represented by counsel in Federal Court with pending cases. *Id*. Counsel for Williams and Smith indicated to defense counsel that they did not want their clients to provide information. *Id*. at PAGE ID 2016. Mr. Price indicated that Williams and Smith gave consent to their lawyers to provide testimony. *Id*. at PAGE ID 2017. Gregory was also the Confidential Informant in Christopher Williams pending criminal case. *Id*. at PAGE ID 2019. Reginald Smith is charged in the same pending federal case as Gregory as co-defendants. *Id*. at PAGE ID 2022. Mr. Price indicated that he wanted to call both of these men as character witnesses against Marcus Gregory, identify him as a liar, stealer, thief, murderer, manipulator etc. *Id*. at PAGE ID 2024.

The Court had an extensive colloquy with Mr. Price, defense counsel and the AUSA before determining that Mr. Price's objections to the decisions made by his trial lawyer were noted for the record but deemed trial strategy. *Id*. at PAGE ID 2032-3. The government and the defense indicated that it did not have any objections to the Court's jury instructions. *Id*. at PAGE ID 2035-6.

The defense made its Motion for Acquittal pursuant to Federal Criminal Rule 29 arguing that the government failed to prove that Mr. Price conspired with anyone to possess and distribute crack cocaine. *Id*. at PAGE ID 2037-8. The Court provided a detailed analysis to its denial of the Defendant's Motion. *Id*. at PAGE ID 2040-4. Closing arguments were conducted and the jury was instructed by the Court, with no objections from counsel. *Id*. at PAGE ID 2046-2097.

The jury deliberated from 3:12 p.m. until 5:14 p.m. when the Court received the following question from the jury:

> FOR COUNT ONE SHOULD WE CONSIDER THE AMOUNT OF COCAINE DESCRIBED IN THE SCRIPT OF THE TEXT MESSAGES WHEN CALCULATING THE TOTAL AMOUNT OF COCAINE INVOLVED OR SHOULD WE CONSIDER ONLY THE AMOUNT COLLECTED BY THE POLICE OFFICERS.

*Id*. at PAGE ID 2098.  All parties agreed with the Court's response:

> MEMBERS OF THE JURY, I CANNOT GIVE YOU FURTHER INSTRUCTIONS IN RESPONSE TO YOUR QUESTION, PLEASE REFER TO PAGES 18 AND 19 OF THE JURY CHARGE.

*Id*. at PAGE ID 2100. At 5:38 p.m. the Court was notified that the jury had the following verdict:

> (1) AS TO COUNT ONE OF THE INDICTMENT CHARGING A VIOLATION OF 21 U.S.C. SECTION 846, CONSPIRACY TO DISTRIBUTE AND TO POSSESS WITH THE INTENT TO DISTRIBUTE

23

COCAINE BASE, CRACK, WE FIND THE DEFENDANT MARCUS ISAIAH PRICE GUILTY.

(1A) WE, THE MEMBERS OF THE JURY, FIND BEYOND A REASONABLE DOUBT THAT THE AMOUNT OF COCAINE BASE, CRACK, INVOLVED IN THE CONSPIRACY IS 28 GRAMS OR MORE BUT LESS THAN 280 GRAMS.

(2) AS TO COUNT TWO OF THE INDICTMENT, CHARGING A VIOLATION OF 21 U.S.C. SECTION 841, DISTRIBUTING A QUANTITY OF COCAINE CASE, CRACK, WE FIND THE DEFENDANT MARCUS ISAIAH PRICE GUILTY.

(3) AS TO COUNT THREE OF THE INDICTMENT, CHARGING A VIOLATION OF 21 U.S.C. SECTION 841, DISTRIBUTING A QUANTITY OF COCAINE BASE, CRACK, WE FIND THE DEFENDANT MARCUS ISAIAH PRICE GUILTY.

(4) AS TO COUNT FOUR OF THE INDICTMENT, CHARGING A VIOLATION OF 21 U.S.C. SECTION 841, POSSESSING WITH THE INTENT TO DISTRIBUTE COCAINE BASE, CRACK, WE FIND THE DEFENDANT MARCUS ISAIAH PRICE GUILTY.

4A) WE, THE MEMBERS OF THE JURY, FIND BEYOND A REASONABLE DOUBT THAT THE AMOUNT OF COCAINE BASE, CRACK, INVOLVED IN COUNT FOUR IS 28 GRAMS OR MORE.

*Id.* at PAGE ID 2101-2. All the jurors affirmed that that was their verdict. *Id.* Mr.

Price was referred to United States Probation for the preparation of a presentence

report. *Id.* at PAGE ID 2104.

After trial and prior to sentencing, the government filed an Amended Notice of Prior Conviction pursuant to 21 U.S.C. § 851(a)(1) correcting clerical mistakes and adding the alternative sentences the defendant received in each case. (Notice, R. 90, PAGE ID 334-5).

On September 25, 2017, Attorney D. R. Smith entered an appearance on behalf of Mr. Price as retained counsel for the purpose of sentencing. (Motion, R. 107, PAGE ID 1162). The Court granted Attorney Smith's Motion on September 25, 2017. (Order, R. 108, PAGE ID 1164).

## IV.    SENTENCING.

The first disclosure of Mr. Price's presentence report ("PSR") was on August 24, 2017. (PSR, R. 101, PAGE ID 1136). United State Probation Officer Jennifer N. Joseph calculated a base offense level of at least 280 grams, but less than 840 grams, of cocaine base, corresponding to a base offense level of thirty (30) pursuant to USSG §2D1.1(a)(5). *Id*. at PAGE ID 1140. The PSR then enhanced the base offense level to thirty-seven (37) pursuant to USSG §4B1.1(b), after she determined Mr. Price was a Career Offender. *Id*.   Mr. Price had nine (9) criminal history points, establishing a criminal history category of IV. *Id*. at PAGE ID 1145. As a result of the Career Offender determination, the PSR had an advisory guideline range of 360 months to life imprisonment, based on a total offense level of thirty-seven (37) and a criminal history category of VI. *Id*. at PAGE ID 1150.

25

The Defendant had multiple objections to the PSR, documented in his Notice of Objections to Presentence Investigation Report filed on October 9, 2017. (Notice, R. 109).

On October 16, 2017, the government filed a sentencing memorandum requesting that the Court sentence Mr. Price to the advisory guideline range of 360 months to life imprisonment. (Gov. Memo., R. 110, PAGE ID 1168-1172). In response, Mr. Price requested the court to find that the drug amount in this case was less than 196 grams of cocaine base, corresponding to a base offence level of 26, Criminal History category IV, providing for a guideline range 92 to 115 months imprisonment.  (Def. Memo., R. 111, PAGE ID 1178).  Ultimately, Mr. Price asked the Court to sentence him without the application of the career offender guideline and sentence him to the restricted mandatory minimum sentence of 120 months, i.e. 10 years. *Id*. Mr. Price relied on the  United States Sentencing Commission's Report to Congress regarding Career Offender Sentencing Enhancements, published on August 2016, found at https://www.ussc.gov/research/congressional-reports/2016-report-congress-careeroffender-enhancements. *Id*. at PAGE ID 1178-1185.

On November 6, 2017, Mr. Price appeared before the Honorable District Court Judge J. Ronnie Greer for his sentencing hearing. (Sent. Trans., R. 133, PAGE ID 2108). The Court addressed the multiple objections the Defendant had to

the PSR. *Id*. at PAGE ID 2110. Mr. Price's objection to PSR paragraph 5, alleged incriminating statements made by Mr. Price to Investigator Garrison on July 12, 2016, did not affect the guideline determination. *Id*. at PAGE ID 2112. The Defendant's objection was overruled by the Court by a preponderance of the evidence. *Id*. With regards to Mr. Price's objection to PSR paragraph 6, the defense argued that based upon the lab reports and the jury's verdict, the total amount of narcotics that were attributable to the conspiracy was less than 280 grams of crack cocaine. *Id*. AT PAGE ID 2213-4.

| | |
|---|---|
| Controlled Buy 06/01/2016 | 5.65 Grams crack cocaine |
| Controlled Buy 07/08/2016 | 26.02 Grams crack cocaine |
| Residence Search 07/12/2016 | 111.20 Grams crack cocaine<br>5.5 Grams cocaine base<br>135.25 Grams untested substance |

The defense argued that the 135.25 grams of untested substance should not be included in the total weight because it was not tested by the government, failing to meet the preponderance of the evidence standard. In addition, the jury found Mr. Price responsible for less than 280 grams of cocaine base. As a result, Mr. Price should only be sentenced to 148.37 grams, corresponding to a base offense level of twenty-six (26). The Court opined:

> NOW, THE FACT THAT NO ANALYSIS WAS DONE
> MAY HAVE BEEN ENOUGH FOR THE JURY TO
> MAKE THE FINDING IT MADE; BUT HERE, AS I

27

> SAID, I APPLY A PREPONDERANCE OF THE
> EVIDENCE STANDARD.
>
> GIVEN THE TESTIMONY OF THE CHEMIST AND
> THE DESCRIPTION ON THE FORENSIC CHEMIST
> REPORT, I FIND THAT THE TOTAL AMOUNT OF
> CRACK COCAINE ATTRIBUTABLE TO MR. PRICE
> FOR GUIDELINES CALCULATION PURPOSES IS
> 283.62 GRAMS; AND SO TO THE EXTENT THAT
> THAT OBJECTION NEEDS TO BE DECIDED, THAT
> IS MY DECISION APPLYING A PREPONDERANCE
> OF THE EVIDENCE STANDARD, WHICH IS
> SIMPLY A MORE LIKELY THAN NOT STANDARD;
> AND MY RECOLLECTION IS THAT MS. GOMEZ IS
> CORRECT, THAT THE CHEMIST DID IN FACT
> TESTIFY AT TRIAL **THAT IT WAS MORE
> LIKELY THAN NOT THAT THE 135.25 GRAMS
> OF A ROCK LIKE SUBSTANCE WAS CRACK
> COCAINE**. SO OBJECTIONS NUMBER TWO,
> THREE, FOUR AND FIVE, ALL OF WHICH GO TO
> THAT QUESTION, ARE OVERRULED.

*Id*. at PAGE ID 2121-2. The Court included the 135.25 grams of untested

substance in its total weight determination, corresponding to a base offense level of

thirty (30).

The objection to PSR paragraph 36, alleged uncharged conduct that the

Defendant strongly denied, did not affect the guideline determination. *Id*. at PAGE

ID 2112-3. As a result, Mr. Price's objection was sustained in part by the Court by

a preponderance of the evidence. *Id*. The Court determined it would not consider

the uncharged conduct in determining an appropriate sentence in this case but

denied the Defendant's request to have the paragraph stricken from the PSR. *Id*.

Mr. Price also objected to PSR paragraph 47 and denied being affiliated with any gang. *Id*. at PAGE ID 2123. The Court determined it would not consider the allegation(s) in PSR paragraph 47 in determining an appropriate sentence in this case but denied the Defendant's request to have the paragraph stricken from the PSR. *Id*. at PAGE ID 2124. The Court sustained the Defendant's objection to PSR paragraph 52 and made the recommendation to the Bureau of Prisons that Mr. Price be permitted to participate in the Residential Drug Abuse Treatment program. *Id*. Mr. Price's final objection was to the PSR's determination that he was a career offender, arguing for the Court to use its discretion and not use the career offender guideline range.

After considering all of Mr. Price's objections, the Court found that the appropriate advisory guideline range in this case was 360 months to life imprisonment based upon a total offense level of thirty-seven (37) and a criminal history category of VI. *Id*. at PAGE ID 2125. The Court questioned the government as to the career offender predicate offense in PSR paragraph 31, which occurred on May 6, 2014, within the timeframe of the Indictment and charged in Count 1 of the conspiracy, from March 1, 2014 to August 9, 2016. *Id*. at PAGE ID 2131-2. The Court further questioned the government, stating:

> WE GOT TWO PRIOR PREDICATE OFFENSES
> HERE, ONE OF WHICH IS FOR DISTRIBUTION OF
> MARIJUANA (18 grams), NOT CRACK COCAINE,
> THE OTHER OF WHICH APPEARS TO BE

> CONDUCT WHICH OCCURRED WITHIN THE TIME
> FRAME THAT THE GOVERNMENT ALLEGED FOR
> THE CONSPIRACY, I MEAN, THAT'S NOT
> EXACTLY WHAT THE CAREER OFFENDER
> GUIDELINE WAS SUPPOSED TO BE AIMED AT; IS
> IT?

*Id*. at PAGE ID 2133.

The Court listened to extensive sentencing arguments from the government, defense counsel, and Mr. Price in consideration of the 18 USC § 3553(a) sentencing factors. *Id*. at PAGE ID 2133-2152. The Court concluded:

> THAT A 360 MONTH TO LIFE SENTENCE, WHICH
> IS WHAT THE GUIDELINE RANGE CALLS FOR, IS
> UNDULY HARSH IN LIGHT OF THE NATURE OF
> THE TWO PRIOR CONVICTIONS, ONE OF WHICH
> WAS A CONVICTION FOR POSSESSION OF 18
> GRAMS OF MARIJUANA FOR RESALE, THE
> OTHER OF WHICH INVOLVED 11.9 GRAMS OF
> CRACK COCAINE, AND THE CONDUCT IN THAT
> CASE OCCURRED WITHIN THE TIME FRAME
> CHARGED BY THE GOVERNMENT FOR THE
> CONSPIRACY IN THIS CASE..."

*Id*. at PAGE ID 2158. The District Court considered all of the relevant sentencing factors and decided to impose a sentence within the guideline range that Mr. Price would have received without the career offender in enhancement, using a base offense level of thirty (30) and criminal history category IV.  *Id*. at PAGE ID 2710. Due to the repeated nature of Mr. Price's conduct of selling drugs, the Court sentenced Mr. Price at the high end of the guideline range of 135 to 168 months imprisonment. *Id.*

On November 15, 2017, the Honorable Judge Greer issued Mr. Price's Judgment, sentencing him to "168 months, as to each of Counts One, Two, Three, and Four, to be served concurrently for a net sentence of 168 months. This sentence shall be served concurrently with any sentence that may be imposed for the violation of probation in Washington County, Tennessee Criminal Court Docket Number 39786."  (Judgment, R. 114, PAGE ID 1197). Mr. Price timely filed a pro se Notice of Appeal on November 15, 2017.  (Notice, R, 116, PAGE ID 1207).

## SUMMARY OF THE ARGUMENT

The jury erred in convicting Mr. Price of a criminal conspiracy when, taking the evidence in the light most favorable to the government, the government failed to establish beyond a reasonable doubt the existence of a conspiracy, only that of a buyer/seller relationship between Mr. Price and the undercover informant. Further, the District Court erred when it included un-tested substance(s) in determining Mr. Price's drug quantity pursuant to USSG § 2D1.1. The Court improperly relied on a conclusion from the chemist that did not exist. In addition, there was no testimony that this substance was not tested because it was part of a random sampling. The jury's verdict finding Mr. Price not culpable for more than 280 grams in this case supports the conclusion that the Court improperly relied upon 135.25 grams of an untested substance, resulting in an increased guideline range of 4-levels. Lastly, the District Court erred in denying defense counsel's Emergency Motion to Withdraw as Counsel and the Defendant's Oral Motion for New Counsel after it was clear that there was an irrevocably broken relationship and the was a complete breakdown in the trust and communication between Mr. Price and his counsel. This breakdown prevented Mr. Price's counsel from being able to present a proper defense at trial, in violation of Mr. Price's constitutional rights. Based on the foregoing, Mr. Price respectfully requests the judgment in his case to be reversed and remanded back to the District Court for either a new trial, and/or resentencing.

# ARGUMENT

## I. THE JURY ERRED IN FINDING THAT THERE WAS A CONSPIRACY IN THIS CASE.

### A. STANDARD OF REVIEW.

The relevant question in assessing a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Kincaide*, 145 F.3d 771, 781 (6th Cir. 1998) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999). On the contrary, the court will "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001).

### B. MR. PRICE DID NOT ENGAGE IN A CONSPIRACY AND THE GOVERNMENT FAILED TO PROVE ANYTHING MORE THAN A BUYER/SELLER RELATIONSHIP WITH GREGORY.

The government failed to prove that Mr. Price engaged in a conspiracy to possess with the intent to distribute Cocaine Base beyond a reasonable doubt. A conviction for conspiracy requires proof of an agreement to commit a crime other than the crime that consists of the sale itself. To prove a conspiracy, the following elements must be established: (1) An object to be accomplished. (2) A plan or

33

scheme embodying means to accomplish that object. (3) An agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object by the means embodied in the agreement, or by any effectual means. *United States v. Gibbs,* 182 F.3d 408, 420 (6th Cir. 1999) (quoting *United States v. Bostic,* 480 F.2d 965, 968 (6th Cir. 1973)) (internal quotation marks omitted). "Drug distribution conspiracies are often 'chain' conspiracies such that agreement can be inferred from the interdependence of the enterprise. One can assume that participants understand that they are participating in a joint enterprise because success is dependent on the success of those from whom they buy and to whom they sell." *United States v. Spearman,* 186 F.3d 743, 746 (6th Cir. 1999) (citing *United States v. Bourjaily,* 781 F.2d 539, 545 (6th Cir. 1986)).

Mr. Price argues that the evidence presented at his trial was insufficient to convict him of a conspiracy because, at most, taking the evidence in the light most favorable to the government, it proved that Mr. Price sold Cocaine Base to Marcus Gregory on two (2) occasions. A "buyer-seller relationship" is not enough to make someone a participant in a drug conspiracy, "further evidence indicating knowledge of and participation in the conspiracy" are needed to link the defendant to the conspiracy. *Gibbs,* 182 F.3d at 421. The government argued that Mr. Price was "fronted" eight (8) ounces of crack cocaine through the uncorroborated

testimony of Investigator Garrison about what Mr. Price allegedly said during his interview of him. (Trial Trans., R. 131, PAGE ID 1825-6).

The government failed to prove that Mr. Price and the paid informant Gregory had an agreement to further distribute the drugs in question. In general, "a "buyer-seller relationship" is not enough to make someone a participant in a drug conspiracy *United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004). Rather, "further evidence indicating knowledge of and participation in the conspiracy" is required. *Id*. Mr. Price was the sole Defendant named in this conspiracy and the government did not establish that a conspiracy existed with Mr. Price and any other individual. There was insufficient evidence supporting the jury's determination that Mr. Price participated in a conspiracy to distribute Cocaine Base warranting reversal of the judgment and remand to the District Court.

## II.   THE DISTRICT COURT ERRED IN DETERMINING THE DRUG QUANTITY AT SENTENCING.

### A.   STANDARD OF REVIEW.

A district court's factual calculation of the drug quantity attributable to a defendant is reviewed for clear error. *United States v. Olsen*, 537 F.3d 660, 663 (6th Cir. 2008). "[T]he district court must set forth the evidence upon which it relies and make specific findings that are supported by a preponderance of the evidence." *United States v. Long*, 190 F.3d 471, 478 (6th Cir. 1999). "[W]hen the exact amount of drugs involved is uncertain, the court may make an estimate

35

supported by **competent evidence**. . . ." *United States v. Keszthelyi*, 308 F.3d 557, 576 (6th Cir. 2002) (internal quotation marks omitted).

In determining whether a district court's calculation of drug quantity is clearly erroneous, a key issue is the extent to which the court identified the evidence on which it relied in making that calculation. *Compare, e.g., United States v. Baro,* 15 F.3d 563, 569 (6th Cir. 1994) (vacating defendants' sentences because the district court attributed an extra kilogram of cocaine without making any factual findings), *United States v. Medina,* 992 F.2d 573 (6th Cir. 1993) (vacating sentences because the district court imputed knowledge of the whole extent of the conspiracy to the defendants without making a finding that it was reasonable to do so), *and United States v. Walton,* 908 F.2d 1289, 1302-03 (6th Cir. 1990) (vacating sentences because the district court extrapolated rate of cocaine dealing without identifying competent circumstantial evidence to support the extrapolation), *with United States v. Ward,* 68 F.3d 146, 150 (6th Cir. 1995) (upholding sentence where the district court "clearly spelled out the reasons for his conclusion that Ward was responsible for over 3,000 kilograms of marijuana" and did not speculate as to the quantity), *and United States v. West,* 948 F.2d 1042 (6th Cir. 1991) (upholding sentence where the district court's drug quantity determination was based upon testimony that the defendant had been involved in many transactions, each involving over four kilograms of cocaine).

## B.    THE DISTRICT COURT ERRED IN DETERMINING THAT THE 135.25 GRAMS OF UNTESTED SUBSTANCE WAS CRACK COCAINE.

The District Court improperly held Mr. Price responsible for a drug quantity under USSG § 2D1.1 that was not supported by competent evidence presented at trial or at his sentencing hearing. The only competent evidence and testimony provided in support of Mr. Price's drug quantity base offense level, was the following substances that were tested by Special Agent Forensic Scientists Jacob White and Erica Stoner and testified to at trial:

| | |
|---|---|
| Controlled Buy 06/01/2016 | 5.65 Grams crack cocaine |
| Controlled Buy 07/08/2016 | 26.02 Grams crack cocaine |
| Residence Search 07/12/2016 | 111.20 Grams crack cocaine<br>5.5 Grams cocaine base |
| Total tested drug quantity: | 148.37 Grams Cocaine Base |

In reaching its conclusion regarding the 135.25 grams of untested substance at sentencing, the Court found that the chemist did in fact testify at trial that it was more likely than not that the 135.25 grams of a rock like substance was crack cocaine. (Sent. Trans., R. 133, PAGE ID 2121-2).  The chemists never made that conclusion at trial.

Without the 135.25 grams of the untested substance included in his base offense level, Mr. Price would have only been found to be responsible for 148.37 Grams of Cocaine Base. According to USSG § 2D1.1, a range of 112 G but less

than 196 G of Cocaine Base is a base offense level of twenty-six (26). Instead of using this competent evidence and reliable information, the Court independently made its own determination that this extra untested substance was in fact Cocaine Base, after the jury only found Mr. Price responsible for less than 280 grams of Cocaine Base. It was clear that the jury determined that the untested substance did not contain Cocaine Base based on its verdict.

"[C]ourts have endorsed statistically based drug-quantity extrapolations predicated on random test samples in circumstances where the government was able to demonstrate an 'adequate basis in fact for the extrapolation and that the quantity was determined in a manner consistent with the accepted standards of [reasonable] reliability.' " *United States v. Jackson*, 470 F.3d 299, 310–311 (6th Cir.2006), quoting *United States v. Scalia*, 993 F.2d 984, 989 (1st Cir.1993), quoting *United States v. McCutchen*, 992 F.2d 22, 25–26 (3d Cir.1993). Sufficient indicia of reliability may be found where the evidence demonstrates that "(1) a proper 'random' selection procedure was employed; (2) the chemical testing method conformed with an accepted methodology; (3) the tested and untested samples were sufficiently similar in physical appearance; and (4) the tested and untested samples were contemporaneously seized at the search scene." *Jackson* at 311, quoting *Scalia* at 989. Thus, critical issues with respect to random sampling pertain to the appropriateness of the random selection procedure and the

methodology employed in testing for the particular substance.  *Id*. at ¶ 14 (Belfance, J. concurring).

Special Agent Forensic Scientist Erica Stoner did not perform a random sampling in this case. Agent Stoner identified 111.20 grams of what she described as "damp or wet rock like substance" which she tested and determined it was Cocaine Base and 5.5 grams of a white powder and not rock like substance which she tested and determined it was Cocaine Base. (Trial, R.  132, PAGE ID 1946, 1948. When asked to explain why she did not test the other bag, containing a substance weighing 135.25 grams, she stated:

> SO ACCORDING TO TBI POLICY, WE WORK CASES TO THE HIGHEST PENALTY; SO IN THE STATE OF TENNESSEE, THERE ARE CERTAIN WEIGHT CUT-OFFS OR WHERE THERE'S A PENALTY ENHANCEMENT, SO IN THE CASE OF COCAINE IN THE STATE OF TENNESSEE, IF YOU HAVE MORE THAN HALF A GRAM OF COCAINE, THEN THERE'S A PENALTY ENHANCEMENT. THE NEXT WEIGHTCUT-OFF AFTER HALF A GRAM IS 26 GRAMS WHERE THE PENALTY IS INCREASED; AND THEN AFTER 26, IT GOES UP TO 300, SO ESSENTIALLY BETWEEN 26 GRAMS AND 300 GRAMS, THE PENALTY IS THE SAME. WHEN I WEIGHED THIS, IT WAS 111.20 GRAMS, WHICH WAS ABOVE 26, BUT BELOW 300. THE ADDITIONAL WEIGHT OF THE ROCK LIKE SUBSTANCE THAT I DID NOT WORK WOULD NOT GET ME ABOVE 300, SO WE'RE NOT REQUIRED TO WORK IT BECAUSE THERE WOULD BE NO PENALTY ENHANCEMENT; AND THAT'S TBI POLICY.

Although Agent Stoner testified that it was visually consistent with the previous bag she had tested, when asked if she could make any determination based on her experience as to the substance in the second bag, she stated:

> **YOU KNOW, I DID NOT TEST THE SECOND ONE, SO I CAN'T, YOU KNOW, SAY THAT IT WAS OR WASN'T ANYTHING BECAUSE I DID NOT PERFORM ANY, ANY SCIENTIFIC ANALYSIS ON THAT.** THE ONLY THING THAT I CAN SAY IS THAT IT WAS VISUALLY CONSISTENT WITH THE OTHER ROCK LIKE SUBSTANCE IN THE CASE THAT WAS POSITIVELY IDENTIFIED AS COCAINE BASE.

(Trial, R. 132, PAGE ID 1944-5). Agent Stoner testified that she could not say what the 135.25 grams of substance was.

No tests were performed to determine what the substance or substances was in the bag(s) totaling 135.25 grams. As a result of the inclusion of this untested substance, Mr. Price was subject to a base offense level of thirty (30) for 280 grams to 840 grams of Cocaine Base instead of an offender level of twenty-six (26) for 112 grams to 196 grams of Cocaine Base. (Sent. Trans., R. 133, PAGE ID 2167).

At sentencing, the Court determined that the Career Offender guideline range in this case was too harsh and properly used its discretion to determine that the Court was not going to enhance Mr. Price pursuant to USSG §4B1.1(b). *Id.* The guideline range Mr. Price faced with a base offense level of thirty (30),

criminal history category IV was 138 to 168 months imprisonment. The guideline range Mr. Price would have faced with a base offense level of twenty-six (26), criminal history category IV would have been 92 to 115 months imprisonment. The Court sentenced Mr. Price to the high end of his guideline range, 168 months imprisonment.  Mr. Price suffered prejudice by the Court's improper determination because had the Court used the correct drug quantity, Mr. Price could have been sentenced to the high end of his correct guideline range and received the mandatory minimum 120 months imprisonment.

Based upon the foregoing, the Appellant respectfully requests this Honorable Court remand his case for resentencing with a base offense level of twenty-six (26), which is supported by competently tested evidence in this case and supported by the jury's verdict.

## III.  THE DISTRICT COURT ERRED WHEN IT DENIED DEFENSE COUNSEL'S EMERGENCY MOTION TO WITHDRAW AND THE DEFENDANT'S MOTION FOR NEW COUNSEL.

### A.    STANDARD OF REVIEW.

The denial of a motion to withdraw as counsel is reviewed under the abuse of discretion standard. *Brandon v. Blech*, 560 F.3d 536, 537 (6th Cir. 2009) *United States v. Cole*, 988 F.2d 681, 683 (7th Cir. 1993); *United States v. Walker*, 915 F.2d 480, 482 (9th Cir. 1990); *United States v. Boone*, 437 F.3d 829, 839 (8th Cir. 2006).

**B.    THE COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION TO WITHDRAW AFTER IT WAS CLEAR THAT THERE WAS A BREAKDOWN IN TRUST AND COMMUNICATION BETWEEN DEFENSE COUNSEL AND THE DEFENDANT.**

Mr. Price and his trial counsel, Angela R. Morelock Esq., had an irrevocably broken relationship that created a total lack of communication, which prevented counsel from presenting an adequate defense at trial in violation of Mr. Price's constitutional rights. When filing a motion to withdraw, an attorney should provide a detailed explanation of the reasons why he or she believes that "good cause" exists for him or her to withdraw as counsel. *United States v. Hall*, 35 F.3d 310, 316 (7th Cir. 1994). The Seventh Circuit adopted in *Cole* the principle that "unless there is a demonstrated conflict of interests or counsel and defendant are embroiled in an irreconcilable conflict that is so great that it resulted in a total lack of communication preventing an adequate defense, there is no abuse of discretion in denying a motion to withdraw." *United States v. Cole*, 988 F.2d 681, 683 (7th Cir. 1993). The Eighth Circuit in *Boone*, stated that the Defendant must show justifiable dissatisfaction with his counsel, which can arise from irreconcilable conflict, a complete breakdown in communication, or any other factor interfering significantly with an attorney's ability to provide zealous representation." *United States v. Boone*, 437 F.3d 829, 839 (8th Cir. 2006).

Attorney Morelock filed a very detailed Motion to Withdraw as counsel in this case. (Motion, R. 81, PAGE ID 196). The Memorandum in Support argued

that "Counsel can no longer represent Mr. Price because he refuses to assist in his own defense therefore counsel is unable to provide adequate representation and the attorney/client relationship is irretrievably broken." (Memo, R. 83, PAGE ID 200). "No attorney can prepare for trial without the client's assistance." *Id*. at 204. Attorney Morelock asked the District Court to grant her Motion "based on counsel being unable to provide an adequate defense for Mr. Price. Said basis is rooted in the fact that Mr. Price refuses to participate in assisting counsel in his own defense. Additionally, counsel, after much reflection on the events of the last two weeks, believes that the attorney/client relationship is irretrievably broken." *Id*. at 204-5.

The Court scheduled counsel's Emergency Motion to Withdraw for an oral hearing on June 23, 2017, with the jury trial scheduled to begin six (6) days later, on June 29, 2017. (Trans. R. 139, PAGE ID 1623). At the hearing, Mr. Price testified that:

> SHE'S TELLING YOU THAT THE TRUST IS GONE, THE BREACH OF TRUST IS BEYOND REPAIR. I'VE BEEN STATING THAT, AND I JUST DON'T UNDERSTAND WHY I CANNOT HAVE THE NEW COUNSEL; AND LIKE THAT'S ALL I'M ASKING FOR, THAT'S ALL I'M ASKING FOR.

*Id*. at PAGE ID 1663. After listening to all of the facts and arguments from defense counsel, the investigator counsel retained, and Mr. Price, the Court agreed that there was clearly a trust issue between Mr. Price and his CJA appointed counsel. *Id*. at 1667. The Court sympathized with the parties but decided that the Court did

not have any confidence that replacing Ms. Morelock with another lawyer would resolve that problem.  *Id*. Ultimately, the Court denied the Emergency Motion to Withdraw as Counsel and the Defendant's Oral Motion for New Counsel, finding there was no basis to appoint new counsel.  *Id*. at PAGE ID 1667-9.

It was clear based upon the Motion and the Court's questioning of both defense counsel and the Defendant that they were unable to work together in defending Mr. Price at trial.  There were possibly other parties that could have been responsible for the drugs found at Mr. Price's apartment that Mr. Price did not feel comfortable discussing with his lawyer because of the lack of trust between the parties.  Based upon the foregoing, the District Court abused its discretion when it failed to provide Mr. Price with new counsel prior to trial, violating his constitutional rights, warranting reversal of the jury verdict and remand for a new trial.

## **CONCLUSION**

For the reasons set forth above, this Honorable Court should reverse the District Court's judgment and remand his case back to the District Court for a new trial. In the alternative, this Honorable Court should reverse the District Court's judgment and remand his case back to the District Court for a new sentencing hearing.

Respectfully submitted,

/s/ Kevin M. Cafferkey_____
**KEVIN M. CAFFERKEY, (#0031470)**
Attorney for Defendant/Appellant
55 Public Square
2100 Illuminating Building
Cleveland, OH 44113
(216) 363-6014
kmcafferkey@hotmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief is submitted under Rule 32(a)(7)(C). This brief complies with the type-volume limitations set forth in Rule 32(a)(7). This document contains 9,667 words.

Dated: July 12, 2018.

/s/ Kevin M. Cafferkey_____
**KEVIN M. CAFFERKEY, (#0031470)**
Attorney for Defendant/Appellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2018 a copy of the foregoing Appellant's Brief was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's system. Service by ordinary mail has been made upon Appellant/Defendant at:

**Marcus Isaiah Price**
**Register Number: 51737-074**
FCI Gilmer
Federal Correctional Institution
P.O. BOX 6000
Glenville, WV 26351

/s/ Kevin M. Cafferkey_____
**KEVIN M. CAFFERKEY, (#0031470)**
Attorney for Defendant/Appellant

## APPELLANT'S DESIGNATION OF
## DISTRICT COURT DOCUMENTS

| Record | Page ID | Description |
|---|---|---|
| 3 | 7-9 | Indictment |
| 6 | 14 | Minute Entry of Arraignment (September 6, 2016) |
| 15 | 33 | Attorney Hudson's Motion to Withdraw |
| 19 | 38 | Order Granting Motion to Withdraw and Appoint Angela Morelock as counsel |
| 37 | 66 | Minute Entry Scheduling Pretrial and Trial Dates |
| 39 | 69-70 | Pro se Motion for Removal of Counsel |
| 44 | 76-77 | Motion to Suppress Jail Calls |
| 47 | 83-85 | Motion to Exclude Prior Convictions |
| 48 | 86-88 | Motion to Suppress Statement by Defendant |
| 49 | 89-93 | Brief in Support of Motion to Suppress Jail Calls |
| 50 | 96-97 | Motion to Dismiss Counts One, Two and Three of the Indictment |
| 51 | 98-117 | Brief in Support of Motion to Dismiss Counts One, Two and Three of the Indictment |
| 58 | 139-141 | Information to Establish Prior Conviction |
| 59 | 142-144 | Response in Opposition to the Defendant's Motion to Suppress Jail Calls |
| 60 | 145-146 | Response in Opposition to the Defendant's Motion to Exclude Prior Convictions |
| 61 | 147-156 | Response in Opposition to the Defendant's Motion to Suppress Statement |

| 62 | 157-160 | Response in Opposition to the Defendant's Dismiss Counts One, Two and Three of the Indictment |
| 65 | 163 | Witness and Exhibit List to Motion to Suppress Hearing |
| 66 | 164-165 | Order Granting the Defendant's Motion to Suppress Jail Calls as moot |
| 67 | 166-170 | Recommendation to deny the Defendant's Motion to Suppress the statement he gave to law enforcement |
| 68 | 171-173 | Order Deferring the ruling on the Defendant's Motion to exclude the introduction of his prior convictions during trial |
| 69 | 174-175 | Recommendation to deny the Defendant's Motion to Dismiss Counts One, Two, and Three of the Indictment |
| 79 | 190-193 | Letter from Marcus Price |
| 80 | 195 | Order adopting and approving the recommendations and Orders of Magistrate Corker. |
| 81 | 196-197 | Emergency Motion to Withdraw as Counsel |
| 85 | 207-212 | Sealed Memorandum in Support of Emergency Motion to Withdraw as Counsel |
| 90 | 334-336 | Amended Information to Establish Prior Conviction (Clerical Errors) |
| 91 | 337-428 | Transcript of Motion Hearing (May 22, 2017) |
| 95 | 433 | Trial Witness List |
| 96 | 1572 | Government Exhibit List |
| 97 | 435-437 | Verdict Form |

| 101 | 1136-1153 | Final Presentence Report |
| 107 | 1162-1163 | Motion to Substitute Counsel |
| 108 | 1164 | Order Granting Motion to Substitute Counsel |
| 109 | | Notice of Objections to Presentence Investigation Report |
| 110 | 1168-1172 | United States Sentencing Memorandum |
| 111 | 1173-1185 | Defendant's Sentencing Memorandum |
| 114 | 1195- 1202 | Judgment |
| 116 | 1207 | Notice of Appeal |
| 126 | 1551-1569 | Transcript of Motion Hearing (March 16, 2017) |
| 129 | 1622-1691 | Transcript of Motion Hearing (June 23, 2017) |
| 131 | 1721-1900 | Trial Transcript Volume I (June 29, 2017) |
| 132 | 1901- 2107 | Trial Transcript Volume II (June 30, 2017) |
| 133 | 2108-2177 | Sentencing Transcript (November 6, 2017) |