**Case No. 17-6365**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**MARCUS PRICE,**

**Defendant-Appellant.**

---

On appeal from the United States District Court
for the Eastern District of Tennessee

---

**BRIEF OF THE UNITED STATES**

---

J. Douglas Overbey
United States Attorney
Eastern District of Tennessee

Meghan L. Gomez
Assistant United States Attorney
220 West Depot Street, Suite 423
Greeneville, Tennessee  37743
423-639-6759

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE..................................................................1

    A.    Investigators identify the defendant as a distributor of crack cocaine and arrange two controlled purchases from him...........................................1

    B.    A search of the defendant's home reveals additional cocaine base..............3

    C.    The defendant confessed that he had been selling crack cocaine, and a consensual search of his cell phone confirmed that admission..........4

    D.    The defendant was charged with federal drug-trafficking offenses, and he repeatedly complained about appointed counsel..............................6

    E.    The defendant was convicted at trial. ...........................................9

    F.    The defendant received a below-guidelines sentence................................10

SUMMARY OF ARGUMENT .............................................................12

ARGUMENT .............................................................................13

    I.    The evidence amply supports defendant's conspiracy conviction. ............13

    II.    The district court did not err in holding the defendant accountable for 283.62 grams of cocaine base. ...........................................16

    III.    The district court properly exercised its discretion by denying the defendant's motion for new counsel immediately before trial. .................18

A.    The motion was not timely..................................................................19

B.    The court thoroughly inquired into the alleged conflict. ...................20

C.    This case did not involve a total lack of communication between the defendant and appointed counsel, but a lack of trust arising from the defendant's reluctance to assist in his own defense. ..........................21

D.    The public's interest in the prompt and efficient administration of justice far outweighed the defendant's desire for new counsel. ......21

CONCLUSION ......................................................................................................22

CERTIFICATE OF SERVICE ..............................................................................23

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............24

# TABLE OF AUTHORITIES

## CASES

*Jackson v. Virginia*, 443 U.S. 307 (1979).................................................................13

*United States v. Anderson*, 526 F.3d 319 (6th Cir. 2008)........................................18

*United States v. Ayoub*, 701 F. App'x 427 (6th Cir. 2017)......................................15

*United States v. Beals*, 698 F.3d 248 (6th Cir. 2012) .............................................14

*United States v. Bourjaily*, 781 F.2d 539 (6th Cir. 1986).......................................15

*United States v. Brown*, 332 F.3d 363 (6th Cir. 2003) ...........................................14

*United States v. Chambers*, 441 F.3d 438 (6th Cir. 2006)............................... 19, 20

*United States v. Crum*, 625 F. App'x 304 (6th Cir. 2015)......................................14

*United States v. Fisher*, 648 F.3d 442 (6th Cir. 2011)............................................13

*United States v. Fonville*, 422 F. App'x 473 (6th Cir. 2011) ..................................19

*United States v. Garcia*, 758 F.3d 714 (6th Cir. 2014)...........................................16

*United States v. Gunter*, 551 F.3d 472 (6th Cir. 2009)...........................................14

*United States v. Hernandez,* 227 F.3d 686 (6th Cir. 2000) ....................................16

*United States v. Humphrey,* 656 F. App'x 91 (6th Cir. 2016)................................17

*United States v. Jennings*, 83 F.3d 145 (6th Cir. 1996)..........................................19

*United States v. Layne*, 192 F.3d 556 (6th Cir. 1999) ....................................... 14-15

*United States v. Mack*, 258 F.3d 548 (6th Cir. 2001) ....................................... 18, 19

*United States v. Martinez*, 430 F.3d 317 (6th Cir. 2005)..........................................14

*United States v. Orozco*, 716 F. App'x 390 (6th Cir. 2017) ....................................15

*United States v. Paige*, 470 F.3d 603 (6th Cir. 2006)..............................................14

*United States v. Spearman*, 186 F.3d 743 (6th Cir. 1999).......................................13

*United States v. Sturman*, 951 F.2d 1466 (6th Cir. 1991) ......................................14

*United States v. Vasquez*, 560 F.3d 461 (6th Cir. 2009).................................. 19, 21

*United States v. Washington*, 702 F.3d 886 (6th Cir. 2012)...................................13

*United States v. Watson*, 620 F. App'x 493 (6th Cir. 2015)........................... 19, 21

*United States v. Williams,* 176 F.3d 301 (6th Cir. 1999)........................................19

*United States v. Wright*, 16 F.3d 1429 (6th Cir. 1994)...........................................13

## STATUTES AND SENTENCING GUIDELINES

21 U.S.C. § 841(a)(1)..................................................................................................6

21 U.S.C. § 846 ................................................................................................... 6, 13

U.S.S.G. § 4B1.1 ......................................................................................................10

## STATEMENT REGARDING ORAL ARGUMENT

The issues in this case are fully presented in the briefs and in the record, such that this Court's decisional process is unlikely to be aided by oral argument. Accordingly, oral argument is not requested.

## STATEMENT OF THE ISSUES

I.     Whether a rational juror could have concluded beyond a reasonable doubt that the defendant participated in a conspiracy to distribute and possess with intent to distribute cocaine base.

II.    Whether the district court reasonably estimated the drug quantity attributable to the defendant for sentencing purposes.

III.   Whether the district court properly exercised its discretion by declining to appoint new counsel for the defendant five days before trial.

## STATEMENT OF THE CASE

### A.     Investigators identify the defendant as a distributor of crack cocaine and arrange two controlled purchases from him.

Federal and local law enforcement officers investigating drug distribution in and around Johnson City, Tennessee, identified Marcus Gregory as a drug dealer and then questioned him about other individuals also selling drugs. (R. 131, Trial Tr., PageID# 1765, 1857-58.) Gregory told investigators about the defendant, with whom he regulated the Johnson City market for crack cocaine distribution. (*Id*. at

PageID# 1856.)  Although they were technically competitors, the two men "had a pretty good friendship" and often helped each other by sharing customers and suppliers.  (*Id*. at PageID# 1856-57.)  In the summer of 2016, Gregory agreed to purchase crack cocaine from the defendant on behalf of law enforcement.  (*Id*. at PageID# 1765, 1858.)

On June 1, 2016, investigators provided Gregory with $1200 and instructed him to purchase one ounce of crack from the defendant. (*Id*. at PageID# 1767, 1858.)  Gregory contacted the defendant by text message and arranged to meet. (*Id*. at PageID# 1767-73, 1858-61.)  With investigators following at a distance, Gregory then went to the defendant's home and purchased one-quarter of an ounce of crack cocaine—approximately 7 grams—from him outside the house.  (*Id*. at PageID# 1771-76, 1861-65.)

On July 7, 2016, the defendant contacted Gregory via text message to say that he had received a new supply of crack.  (*Id*. at PageID# 1797-800, 1866-67.) Gregory replied, "hold me a whole," referring to one ounce of crack.  (*Id*.; R. 132, Trial Tr., PageID# 1963.)  On July 8, 2018, under the direction of law enforcement investigators, Gregory met with the defendant in the parking lot of a local mall and purchased one ounce of crack cocaine from him for $1200.  (*Id*. at PageID# 1802-05, 1867-68, 1870-71.)  Subsequent laboratory testing determined the weight of the crack cocaine to be 26.02 grams.  (R. 133, Trial Tr., PageID# 1940.)

**B.    A search of the defendant's home reveals additional cocaine base.**

During a search of the defendant's home on July 12, 2016, investigators found and seized a significant amount of crack cocaine inside multiple baggies in "a soft-sided fabric case" under the coffee table in the living room.  (R. 131, Trial Tr., PageID# 1830-31, R. 132, Trial Tr., PageID# 1904-07, 1911-14.)  They also saw airline luggage tags bearing the defendant's name and a destination of Atlanta, Georgia.[1]  (R. 132, Trial Tr., PageID# 1907.)

The Tennessee Bureau of Investigation later determined that the total weight of the seized substances was 251.95 grams.  (*Id*. at PageID# 1941-43.)  Aside from 5.50 grams of a white powdery substance, which was confirmed as cocaine base, all of the remaining baggies contained a rock-like substance.  (*Id*. at PageID# 1942-45, 1948.)  Because the baggies were "visually consistent," the analyst tested only one of those bags, weighing 111.20 grams, and determined that it was cocaine base.  (*Id*. at PageID# 1941-47.)

---

[1] The investigators deemed this fact important because Atlanta is "[o]ne of the biggest source cities [for drugs] in the Southeastern United States."  (R. 131, Trial Tr., PageID# 1750.)  Johnson City, by contrast, is deemed a "destination city" for drugs, because "there's a demand for the product."  (*Id*.)

**C.    The defendant confessed that he had been selling crack cocaine, and a consensual search of his cell phone confirmed that admission.**

On July 12, 2016, investigators approached the defendant about his recorded drug sales to Gregory.  (R. 131, Trial Tr., PageID# 1811.)  The defendant initially denied his involvement and did not want to cooperate; he was thus arrested for those two transactions.  (*Id*. at PageID# 1812-13.)  While being transported to the local jail, the defendant changed his mind and said he wanted to speak with investigators, so he was taken to the local FBI office for an interview.  (*Id*. at PageID# 1811, 1814.)  After being advised of his *Miranda* rights, the defendant waived those rights, signing a form to that effect, and agreed to be interviewed. (*Id*. at PageID# 1816.)

The defendant identified his Atlanta supplier and said where they had met. (*Id*. at PageID# 1819.)  He said that, a few months earlier, he was buying only "an ounce or two at a time" from his supplier, but his supplier "told him to step it up" so he began "selling larger amounts to dealers."  (*id*. at PageID# 1819-20.)  The supplier then "fronted" the defendant 8 ounces of crack cocaine for resale, and the defendant owed the supplier $8,000 for that drug quantity.  (*Id*. at PageID# 1821.)

The defendant also provided information about dealers he had supplied, including Gregory.  (*Id*. at PageID# 1822-24.)  He detailed the amounts he sold to each dealer and the frequency.  (*Id*. at PageID# 1822-1824.)

4

A consensual search of the defendant's phone corroborated his statement. (*Id*. at PageID# 1824; R. 132, Trial Tr., PageID# 1965-66.) Using a "mobile data forensic tool," investigators downloaded the contents of the defendant's phone, including more than 10,000 text messages, then reviewed the contents of those messages. (R. 132, Trial Tr., PageID# 1965, 2006.) They found text messages matching those Gregory had sent regarding the controlled transactions. (*Id*. at PageID# 1968-69.) And they also noticed multiple text messages sent to a number with an Atlanta area code. (*Id*. at PageID# 1979.)

The text conversations with the Atlanta number referenced money wire transfers through Walmart. (*Id*. at PageID# 1977-78.) Investigators later verified that the number sequences in the messages corresponded to specific wire transfers and that those transactions had occurred. (*Id*. at PageID# 1977-78.) The text conversations also negotiated logistics, including the need to have a "particular person on standby at all times." (*Id*. at PageID# 1980.) They discussed the type of person to recruit for what they called "the movement"— "got to be solid, can't just send anyone cause something go wrong we both gone." (*Id*. at PageID# 1979-81.)

The phone also contained text messages which investigators believed were references to specific drug transactions. For example, the defendant received a message about "two Vick Jerzy." (*Id*. at PageID# 1990.) Investigators deduced that "Vick Jerzy" referred to Michael Vick's jersey number, 7, and a request for

two thus amounted to a request for 14 grams of drugs.  (*Id*. at PageID# 1990-91.)

Still other messages indicated coordination between the defendant and other drug

dealers.  For example, one text message said, "are we out?  I might run out if this

bitch come through for one and a half."  (*Id*. at PageID# 2001.)

> **D.**    **The defendant was charged with federal drug-trafficking offenses,
> and he repeatedly complained about appointed counsel.**

In August 2016, the defendant was charged with conspiring to distribute and

possess with the intent to distribute at least 280 grams of cocaine base (crack), in

violation of 21 U.S.C. §§ 846 and 841(a)(1); two substantive counts of distributing

cocaine base, in violation of 21 U.S.C. § 841(a)(1); and possession with the intent

to distribute at least 28 grams of cocaine base, also in violation of 21 U.S.C.

§ 841(a)(1).  (R. 3, Indictment, PageID# 7-9.)  Timothy Hudson was appointed to

represent him.  (R. 6, Courtroom Minutes, PageID# 14; R. 8, Order, PageID# 16.)

Attorney Hudson soon moved to withdraw, citing a conflict of interest.

(R. 15, Motion, PageID# 33.)  After conducting a hearing on October 5, 2016, the

magistrate judge granted the motion and appointed Angela Morelock to represent

the defendant instead.  (R. 19, Order, PageID# 38.)

Later that month, the court received an undated, handwritten letter from the

defendant, who claimed that attorney Hudson was not adequately representing him

and sought release on bond pending trial.  (R. 20, Letter, PageID# 40.)  The court

reminded the defendant that attorney Hudson had been replaced by attorney

6

Morelock; the court also noted that the defendant's request for pretrial release was "not viable" because the defendant was already in state custody when the federal charges were filed.  (R. 21, Order, PageID# 43.)

Approximately one month later, on November 20, 2016, the defendant filed a *pro se* motion for a new attorney, claiming that attorney Morelock was not sufficiently involved in the case.  (R. 22, *Pro Se* Motion, PageID# 44-46.)  Before the court conducted a hearing, the defendant withdrew his motion.  (R. 25, Motion, PageID# 50-51; R. 26, Order, PageID# 52.)

Eight days before the defendant's trial was scheduled to begin in June 2017, attorney Morelock moved to withdraw from representing the defendant and filed a sealed memorandum with her reasons.  (R. 81, Motion, PageID# 196-97; R. 85, (Sealed) Memorandum in Support, PageID# 207-12.)  Almost simultaneously, the defendant mailed a *pro se* motion seeking a trial continuance and alleging ineffectiveness by attorney Morelock.[2]  (R. 88, *Pro Se* Motion, PageID# 328-31.) The court held a hearing on June 23, 2017.  (R. 130, Hr'g Tr., PageID# 1692-720.) Attorney Morelock, her defense investigator, and the defendant all testified in a closed proceeding with the government excluded.  (*Id*. at PageID# 1693-95.)

---

[2] The defendant's written motion was not received by the district court until after the hearing on counsel's motion to withdraw, but the defendant told the court during that hearing that he had submitted or would submit such a motion, and the court thus considered it as an oral motion.  (R. 130, Hr'g Tr., PageID# 1697.)

Upon reopening the courtroom, the court denied attorney Morelock's motion to withdraw and the defendant's motion for new counsel. (*Id*. at PageID# 1692-98; R. 89, Order, PageID# 333.) The court explained its reasoning this way:

> Over the last hour I have heard extensively from Ms. Morelock, from her investigator . . . Mr. Farrow, and from Mr. Price himself. Suffice it to say that Ms. Morelock's efforts to prepare for trial in this case have been hampered in large extent by the defendant's recalcitrance and by the defendant's unwillingness to provide her with requested information, based primarily on both what Ms. Morelock and Mr. Price characterize as a trust issue.

> . . . Mr. Price suggests that Ms. Morelock is not prepared for trial, has not made an effort to discover the truth in the case and is not aggressively defending him. Mr. Price identifies no witnesses that Ms. Morelock or Mr. Farrow should have interviewed or who could provide a defense to him in this case. He identifies no documents or investigative leads that could have been pursued but that were not. His expectations of counsel and of the investigator are unrealistic expectations. He faults Ms. Morelock for failing to file certain unspecified motions in the case.

> There clearly is a trust issue here between Mr. Price and counsel. From Mr. Price's point of view the attorney-client relationship with Ms. Morelock has been broken. Ms. Morelock, however, represents to the court that she is prepared for this trial to commence on next Thursday morning. While I certainly sympathize with the position that Ms. Morelock has been placed in by her client, I do not have any confidence that replacing Ms. Morelock with another lawyer would resolve that problem. Given Mr. Price's own actions in this case, a different . . . attorney would have been no more prepared for this trial, and I quote Mr. Price on that, than is Ms. Morelock.

> Mr. Price wants a trial, he is entitled to a trial, and he
> will have a trial.

(R. 130, Hr'g Tr., PageID# 1695-97.)

### E.     The defendant was convicted at trial.

During trial, the United States introduced the audio/video recordings of the controlled transactions between the defendant and Gregory, photos and video recordings from the search of the defendant's home, and various text messages from the defendant's cell phone.  (R. 96, Exhibit List, PageID# 1572.)  The United States also presented testimony about the nature of drug-trafficking:  "The whole drug market is about making money."  (R. 131, Trial Tr., PageID# 1755.)  Large cities serve as sources, selling ounce quantities of crack cocaine to distributors in smaller cities or more rural areas at wholesale prices.  (*Id*. at PageID# 1752-53.)  Those distributors then resell the crack cocaine to other drug dealers and users in smaller quantities, such as grams, at a higher price per unit.  (*Id*. at PageID# 1750-54.)  As with legitimate business models, drug-trafficking is based upon supply and demand.  (*Id*.)  The jury convicted the defendant on all four counts; as to the conspiracy count, it deemed him responsible for a lesser drug quantity than that charged in the indictment.[3]  (R. 97, Verdict Form, PageID# 435-37.)

---

[3] After trial, the defendant's family retained D.R. Smith to represent the defendant at sentencing; he replaced attorney Morelock.  (R. 107, Motion, PageID# 1162; R. 108, Order, PageID# 1164.)

**F.      The defendant received a below-guidelines sentence.**

In calculating the applicable Guidelines range, the probation officer deemed the defendant responsible for 315.29 grams of cocaine base, for an offense level of 30.  (R. 101, (Sealed) Presentence Report at ¶¶ 7, 13, PageID# 1140-41.)  Because petitioner had two prior felony drug convictions, however, he was classified as a career offender under U.S.S.G. § 4B1.1, with an enhanced offense level of 37.  (*Id.* at ¶¶ 19, 28, 31, PageID# 1141, 1143-45.)  The career-offender classification also enhanced the defendant's criminal history category from IV to VI.  (*Id.* at ¶¶ 34-35, PageID# 1145.)  The corresponding Guidelines range was 360 months to life imprisonment.  (*Id.* at ¶ 62, PageID# 1150; *see also id.* at ¶ 61, PageID# 1150 (noting that the defendant was subject to a 10-year mandatory minimum).)

The defendant objected to the presentence report, arguing that he should not be held responsible for more than 196 grams of cocaine base, nor sentenced as a career offender.  (R. 111, Sent. Memorandum, PageID# 1173-85.)  In his view, the applicable Guidelines range should have been 92 to 115 months' imprisonment, restricted by the 10-year mandatory minimum.  (*Id.* at PageID# 1183-85.)  The defendant requested a sentence of 10 years' imprisonment.  (*Id.* at PageID# 1184.)

The United States requested a within-guidelines sentence, based primarily upon the defendant's criminal history.  (R. 110, Sent. Memorandum, PageID# 1171; *see also* R. 133, Sent. Tr., PageID# 2108-44.)

10

During sentencing, the district court determined that the defendant should be held accountable for 283.62 grams of crack cocaine, rather than the 315.29 grams listed in the presentence report. (R. 133, Sent. Tr., PageID# PageID# 2121.) In making that determination, by a preponderance of the evidence, the court reviewed the laboratory reports and the trial testimony of the analyst: "my recollection is . . . that the chemist did in fact testify at trial that it was more likely than not that the 135.25 grams of a rock like substance was crack cocaine." (*Id*.)

Turning to the defendant's objection to the career-offender enhancement, the district court determined that the enhancement had been correctly applied, but would result in an "unduly harsh sentence" in this particular case. (*Id*. at PageID# 2159; *see also id*. at PageID# 2156, 2158, and 2167.) The court explained that the career-offender enhancement functionally tripled the applicable Guidelines range and that both of the defendant's predicate offenses involved relatively small drug quantities. (*Id*.) The court thus varied downward to the Guidelines range that would have applied had the defendant not been classified as a career offender and sentenced the defendant to an aggregate term of 168 months' imprisonment. (*Id*. at PageID# 2167-69; R. 114, Judgment, PageID# 1195-202; R. 115, (Sealed) Statement of Reasons, PageID# 1202-06.)

The defendant timely appealed. (R. 116, Notice of Appeal, PageID# 1207.)

## SUMMARY OF ARGUMENT

The United States presented ample evidence from which any rational juror could have found beyond a reasonable doubt that defendant conspired to distribute cocaine base. The evidence included two recorded controlled transactions, the large quantity of crack cocaine found in the defendant's home, the defendant's own admissions about selling large amounts of cocaine base, and text messages about drug trafficking.

The district court did not clearly err in determining the quantity of cocaine base attributable to the defendant. The record shows that the court conservatively calculated the drug quantity by relying solely upon the lab-verified weights of the substances sold by the defendant or seized from his residence.

Finally, the court properly exercised its discretion by denying the defendant's request for new trial immediately before trial. After hearing testimony from the defendant and his counsel, the court determined that any alleged conflict stemmed from the defendant's unwillingness to work with his appointed counsel, and that a change in counsel would not alter that result.

The defendant's convictions and sentences should be affirmed.

## ARGUMENT

**I.      The evidence amply supports defendant's conspiracy conviction.[4]**

This Court reviews a challenge to the sufficiency of the evidence supporting a criminal conviction de novo. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011). "The relevant inquiry is whether, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). In making this determination, the Court "does not weigh the evidence, assess the credibility of the witnesses, or substitute [its] judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994). "All reasonable inferences and resolutions of credibility are made in the jury's favor." *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012). A defendant challenging the sufficiency of the evidence thus "bears a very heavy burden." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999), and the defendant has not carried that burden here.

To prove a drug conspiracy under 21 U.S.C. § 846, the government must show "(1) an agreement to violate the drug laws, (2) knowledge and intent to join

---

[4] The defendant does not dispute the sufficiency of the evidence for his other three convictions.

the conspiracy, and (3) participation in the conspiracy." *United States v. Crum*, 625 F. App'x 304, 309 (6th Cir. 2015) (quoting *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009)). The agreement need not be formal, written, or spoken; a tacit or material understanding is enough and "can be inferred from circumstantial evidence reasonably interpreted as participation in a common plan." *United States v. Beals*, 698 F.3d 248, 259 (6th Cir. 2012). "Once a conspiracy has been established, the prosecution need only produce slight evidence to implicate the defendant." *United States v. Sturman*, 951 F.2d 1466, 1474 (6th Cir. 1991). "A conspirator need not be an active participant in every phase of a conspiracy, so long as [s]he is a party to the general conspiratorial agreement." *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006).

The defendant argues that the evidence only showed two sales to Gregory as part of a buyer-seller relationship. (Defendant's Brief at 34.) But the jury also heard Gregory's testimony that he and the defendant shared buyers and suppliers and thereby regulated the local drug market. (*E.g.*, R. 131, Trial Tr., PageID# 1856-57.) And "evidence of repeat purchases provides evidence of more than a mere buyer-seller relationship," *United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003), because it establishes an ongoing relationship from which a reasonable juror could find the existence of a conspiracy. *E.g.*, *United States v. Martinez*, 430 F.3d 317, 333 (6th Cir. 2005); *see also United States v. Layne*, 192 F.3d 556, 568

14

(6th Cir. 1999) ("additional evidence beyond the mere purchase or sale of drugs, such as evidence of repeat purchases or some enduring arrangement that implies knowledge of the scope of the conspiracy may support a conspiracy conviction"). Indeed, this Court has explicitly recognized that a defendant's "membership and participation" in a conspiracy "can be inferred through [his] actions and reactions to circumstances." *United States v. Orozco*, 716 F. App'x 390, 393-94 (6th Cir. 2017) (quoting *United States v. Ayoub*, 701 F. App'x 427, 443 (6th Cir. 2017)). Moreover, "[a] large volume of narcotics creates an inference of conspiracy." *United States v. Bourjaily*, 781 F.2d 539, 545 (6th Cir. 1986), and a large volume of cocaine base was recovered from the defendant's home.

The two sales to Gregory were not the totality of the evidence presented to the jury. As discussed above, the evidence showed that the defendant possessed a sizable quantity of cocaine base for resale, repeatedly purchased distribution quantities from an Atlanta supplier, was "fronted" drugs by that supplier at least once, and coordinated with other distributors to supply drugs to customers in and around Johnson City. The defendant admitted his involvement in drug trafficking to investigators, and many of his admissions were corroborated by other evidence, such as Gregory's testimony and the text messages about drugs and wire transfers.

The text messages themselves provided credible evidence of a drug trafficking conspiracy of which the defendant was an active participant. Among

15

other things, the defendant discussed logistics and personnel issues with his Atlanta supplier.  (R. 132, Trial Tr., PageID# 1979-81 ("can't just send anyone cause something go wrong we both gone.").)  And other drug dealers relied on the defendant and his supply.  (*E.g.*, R. 132, Trial Tr., PageID# 2001 ("cuz, are we out? I might run out if this bitch come through for one and a half.").)

The sufficiency of the evidence is assessed from the totality of the evidence actually presented; there is "no single hallmark of sufficiency," and "neither the presence nor the absence of any particular fact [is] dispositive." *United States v. Garcia*, 758 F.3d 714, 718-19 (6th Cir. 2014) (affirming a conviction based on "circumstantial evidence and a chain of inferences").  This Court "looks at what was presented, not what was not presented" because the question is not whether the government "might have presented a more convincing case," but whether it "presented a [legally] sufficient one." *Id*. at 722.  Viewed in the light most favorable to the verdict, the evidence was sufficient to sustain the defendant's conviction for conspiracy to distribute and possess with the intent to distribute crack cocaine.

## II.    The district court did not err in holding the defendant accountable for 283.62 grams of cocaine base.

This Court reviews a district court's determination of drug quantity at sentencing for clear error.  *United States v. Hernandez,* 227 F.3d 686, 697 (6th Cir. 2000).  "As long as the district court 'interprets the evidence in a manner consistent

16

with the record, we are required to uphold its decision even if we would have reached the opposite conclusion.'" *United States v. Humphrey,* 656 F. App'x 91, 94-95 (6th Cir.), *cert. denied*, 137 S. Ct. 318 (2016) (internal citations omitted).

Here, the district court relied upon evidence from trial. An investigator testified that the defendant had admitted purchasing cocaine base "an ounce or two at a time" from his supplier and increasing his drug quantities, at the behest of his supplier, shortly before his arrest in this case. (R. 131, Trial Tr., PageID# 1819, 1821.) The court credited that testimony, finding by a preponderance of the evidence that "the defendant did in fact make those incriminating statements." (R. 133, Sent. Tr., PageID# 2112.)

The court also considered the testimony of two analysts of the Tennessee Bureau of Investigation. The drugs the defendant sold to Gregory on June 1, 2016, weighed 5.65 grams. (R. 131, Trial Tr., PageID# 1796.) The drugs the defendant sold to Gregory on July 8, 2016, weighed 26.02 grams. (R. 132, Trial Tr., PageID# 1940.) And the drugs seized from the defendant's home weighed 251.95 grams. (*Id*. at PageID# 1941-3.) Those three lab-verified amounts total 283.62 grams.

The defendant argues, as he did below, that 135.25 grams found in his house should not have been included because it was not tested. But the analyst testified at trial that the quantity which was not tested was "visually identical" to the rock-like substance which was tested and proved to be crack cocaine. And the analyst

tested the dissimilar bag of a white powdery substance, which also proved to be cocaine base.  (R. 132, Trial Tr., PageID# 1942-45.)  It was thus not unreasonable for the court to find, by a preponderance of the evidence, that the visually identical substances from the defendant's home were "more likely than not" crack cocaine.

This Court has held that "an estimate will suffice so long as it errs on the side of caution and likely underestimates the quantity of drugs actually attributable to the defendant."  *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008). And the district court in this case did just that, relying solely on evidence collected and weighed by the Tennessee Bureau of Investigation, not on the text messages about drug trafficking, nor on defendant's confession.  The district court's drug-quantity determination was not clearly erroneous, and the defendant's sentence should be affirmed.

### III. The district court properly exercised its discretion by denying the defendant's motion for new counsel immediately before trial.

This Court reviews a district court's denial of counsel's motion to withdraw for an abuse of discretion.  *United States v. Mack*, 258 F.3d 548, 555-56 (6th Cir. 2001).  In that context, this Court ordinarily considers "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient

administration of justice." *Id*. (citing *United States v. Williams,* 176 F.3d 301, 314 (6th Cir. 1999); *United States v. Jennings,* 83 F.3d 145, 148 (6th Cir. 1996)). All four of those factors support the district court's ruling in this case.

Additionally, "when the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *United States v. Watson*, 620 F. App'x 493, 498 (6th Cir. 2015) (quoting *United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009)).

## A.    The motion was not timely.

The defendant's counsel moved to withdraw from representing the defendant a mere eight days before trial was scheduled to begin. (*Compare* R. 81, Motion, PageID# 196-97 *with* R. 38, Scheduling Order, PageID# 68-69.) During the hearing on that motion, the defendant said he had submitted, or would soon submit, his own *pro se* motion. (R. 130, Hr'g Tr., PageID# 1697; *see also* R. 88, *Pro Se* Motion, PageID# 328-31.) This Court has previously deemed requests for new counsel to be untimely when filed as early as one-and-one-half months before trial. *United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006); *see also Watson*, 620 F. App'x at 501 (affirming denial of motion for new counsel filed 19 days before trial); *United States v. Fonville*, 422 F. App'x 473 (6th Cir. 2011) (same, where motion was filed 22 days before trial). The defendant's request in this case was thus unquestionably untimely.

Attorney Morelock had represented the defendant since October 2016, and, although the defendant initially expressed concerns about her representation and availability to him (R. 22, *Pro Se* Motion, PageID# 44-46), he withdrew that motion in early December 2016 (R. 25, Motion, PageID# 50-51), thereby signaling to the court that he had resolved his differences with counsel. From December 2016 until June 2017, the record is silent about any disagreement between the defendant and his attorney. To the extent the defendant believed counsel was not "aggressively defending" him because she did not file certain motions (R. 130, Hr'g Tr., PageID# 1695-96), he should have raised that claim before the motions deadline instead of waiting until days before trial. *Chambers*, 441 F.3d at 447.

**B.    The court thoroughly inquired into the alleged conflict.**

The district court conducted a hearing and devoted approximately one hour to hearing testimony from attorney Morelock, her investigator, and the defendant himself. (R. 130, Hr'g Tr., PageID# 1692-95.) The court specifically considered the defendant's claims that defense counsel had "not made an effort to discover the truth in the case" and was "not aggressively defending him," but found that the defendant had not identified any "investigative leads that could have been pursued but that were not." (*Id*. at PageID# 1695.) And although the defendant faulted counsel for not filing "unspecified motions" (*id*. at PageID# 1696), the record shows that counsel filed two suppression motions, a motion to exclude evidence of

20

the defendant's prior convictions, and a motion to dismiss three counts of the four-count indictment.  (*See generally* R. 44, 47, 48, 50, Motions, PageID# 76-79, 83-88, 96-97; R. 49, 51, Briefs in Support, PageID# 89-95, 98-117.)

C.    **This case did not involve a total lack of communication between the defendant and appointed counsel, but a lack of trust arising from the defendant's reluctance to assist in his own defense.**

The district court recognized "trust" issues between the defendant and his counsel, but credited counsel's representation that she was "prepared for this trial." (R. 130, Hr'g Tr., PageID# 1696.)  The court also found that "Ms. Morelock's efforts to prepare for trial in this case have been hampered in large extent by the defendant's recalcitrance and by the defendant's unwillingness to provide her with requested information."  (*Id*. at PageID# 1695-96.)  As this Court has previously recognized, a defendant's refusal to cooperate in his own defense does not entitle him to new counsel.  *See*, *e.g.*, *Watson*, 620 F. App'x at 502 (finding no abuse of discretion in a trial court's determination that an attorney/client relationship is not so "fractured" as to require the appointment of new counsel where the "cracks in the relationship were attributable—at least to some extent—to [the defendant's] refusal to cooperate with [counsel]"); *Vasquez*, 560 F.3d at 468 (same).

D.    **The public's interest in the prompt and efficient administration of justice far outweighed the defendant's desire for new counsel.**

Finally, the court determined that replacing counsel would not likely have resolved the defendant's true concerns; the defendant apparently said during the

closed hearing that another attorney would have been "no more prepared" than attorney Morelock.  (R. 130, Hr'g Tr., PageID# 1696; *see also id.* at PageID# 1697.)  The court also expressed concern that the motion could be "a ploy . . . to delay this case that's almost a year old even further."  (*Id.* at PageID# 1697.)

Given the totality of the circumstances, the district court properly exercised its discretion by denying attorney Morelock's motion to withdraw from further representation and the defendant's motion for new counsel.

## CONCLUSION

For the foregoing reasons, the defendant's convictions and sentence should be affirmed.

Respectfully submitted,

J. Douglas Overbey
United States Attorney

By:    *s/ Meghan L. Gomez*
Meghan L. Gomez
Assistant United States Attorney
220 West Depot Street, Suite 423
Greeneville, Tennessee  37743
423-639-6759

## CERTIFICATE OF SERVICE

I certify that, on September 26, 2018, this brief was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing

system to all parties indicated on the electronic filing receipt, and those parties may

access this brief through the Court's electronic filing system.

*s/ Meghan L. Gomez*
Meghan L. Gomez
Assistant United States Attorney

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

UNITED STATES OF AMERICA,
        Plaintiff-Appellee,
   v.

MARCUS PRICE,
        Defendant-Appellant.

On appeal from the United
States District Court for the
Eastern District of Tennessee
No. 2:16-cr-87

| ENTRY NO. | DESCRIPTION OF ENTRY | PAGE ID# RANGE |
|---|---|---|
| R. 3 | Indictment | 7-9 |
| R. 6 | Courtroom Minutes | 14 |
| R. 8 | Order | 16 |
| R. 15 | Motion | 33 |
| R. 20 | Letter | 40 |
| R. 21 | Order | 43 |
| R. 22 | *Pro Se* Motion | 44-46 |
| R. 25 | Motion | 50-51 |
| R. 26 | Order | 52 |
| R. 38 | Scheduling Order | 68-69 |
| R. 44 | Motion | 76-78 |
| R. 47 | Motion | 83-85 |
| R. 48 | Motion | 86-88 |
| R. 49 | Brief in Support | 89-93 |
| R. 50 | Motion | 96-97 |
| R. 51 | Brief in Support | 98-105 |
| R. 81 | Motion | 196-97 |
| R. 85 | (Sealed) Memorandum in Support | 207-12 |
| R. 88 | *Pro Se* Motion | 328-31 |
| R. 89 | Order | 333 |
| R. 96 | Exhibit List | 1572 |
| R. 97 | Verdict Form | 435-37 |
| R. 101 | (Sealed) Presentence Report | 1140-50 |

| *ENTRY NO.* | *DESCRIPTION OF ENTRY* | *PAGE ID# RANGE* |
|---|---|---|
| R. 107 | Motion | 1162 |
| R. 108 | Order | 1164 |
| R. 110 | Sentencing Memorandum | 1171 |
| R. 111 | Sentencing Memorandum | 1173-85 |
| R. 114 | Judgment | 1195-202 |
| R. 115 | (Sealed) Statement of Reason | 1202-06 |
| R. 116 | Notice of Appeal | 1207 |
| R. 130 | Hearing Transcript | 1692-720 |
| R. 131 | Trial Transcript | 1750-2006 |
| R. 132 | Trial Transcript | 1940-2001 |
| R. 133 | Sentencing Transcript | 2108-69 |

 *s/ Meghan L. Gomez*
Meghan L. Gomez
Assistant United States Attorney