<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0041n.06

Case No. 17-6365

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Jan 25, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| MARCUS ISAIAH PRICE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:  CLAY, COOK, and LARSEN, Circuit Judges.

COOK, Circuit Judge.  A jury convicted Marcus Price on various drug charges stemming from his possession and distribution of crack cocaine, and the district court later imposed a below-Guidelines sentence.  On appeal he challenges the sufficiency of the evidence for his conspiracy conviction, the court's determination of attributable drug quantity, and the denial of two motions—one by him and one by his attorney—requesting new counsel.  Because we find no error warranting reversal, we AFFIRM Price's conviction and sentence.

**I.**

With the help of a confidential informant, law enforcement conducted two controlled purchases of crack cocaine from Price.  Less than a week later, investigators interviewed Price, and he admitted that an individual in Atlanta supplied him with drugs to sell.  According to Price, though he purchased only "an ounce or two" at first, his supplier told him to "step it up" and

Case No. 17-6365, *United States v. Price*

"fronted [him] eight ounces of crack cocaine" at the third transaction, moving him to sell larger amounts to drug dealers. Price went on to provide information about local dealers he had supplied, the quantities he sold them, and the frequency of the sales. He also consented to the search of his cell phone, which produced text messages corroborating his statement to authorities.

That same day, investigators searched Price's apartment and seized multiple baggies filled with narcotics, later confirmed to total 251.95 grams by the Tennessee Bureau of Investigation ("TBI"). Of the bags seized, TBI tested one that contained a white powdery substance and determined it to be cocaine base. The rest contained a rock-like substance. TBI tested just one and confirmed it to be cocaine base (or crack cocaine). At trial, the TBI analyst testified that the untested bags were "visually consistent" with the other rock-like substance in the case that was positively identified as cocaine base.

A grand jury indicted Price on several drug-related charges, including conspiring to distribute and possess with the intent to distribute at least 280 grams of cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1). Almost two months later, after Price's court-appointed attorney had to withdraw, the court appointed Angela Morelock as counsel. Shortly thereafter, Price filed a pro se motion requesting a new attorney, which was resolved a few days later after a meeting with Morelock addressed his concerns. A few months later, Price again moved the court to give him a new lawyer, and the court denied the motion after holding a hearing.

Then, just eight days before trial was to begin, Morelock moved to withdraw as Price's attorney. The court once again held a hearing. At that hearing, Price moved orally for new counsel. The court heard testimony from Morelock, her defense investigator, and Price, outside the presence of the government. Ultimately, the court denied the motions, finding that Morelock had "in fact done everything she could to prepare for this trial" with "little or no assistance" from Price, and

Case No. 17-6365, *United States v. Price*

that it did "not have any confidence that replacing [Morelock] with another lawyer would resolve [the] problem."  R. 130, PageID 1696.

After a two-day trial, the jury found Price guilty on all counts.  But on the conspiracy count, it found him responsible for less than 280 grams, a lesser quantity than charged in the indictment. At sentencing, however, the judge, by a preponderance of the evidence, attributed 283.62 grams to Price.  Importantly, that total included the untested 135.25 grams of "visually consistent" rock-like substance seized from Price's apartment.

The court ultimately imposed a sentence of 168 months, deeming the Guidelines range of 360 months to life to be "unduly harsh."  Price appealed.

## II.

### A. Sufficiency of the Evidence

Price first challenges the sufficiency of the evidence supporting the jury's verdict of guilty on the conspiracy charge, which we review de novo.  *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010).  This inquiry requires us to ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  If so, the challenge must fail.  *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).  In making this determination, we draw "[a]ll reasonable inferences and resolutions of credibility . . . in the jury's favor," *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012), and will not "substitute our judgment for that of the jury," *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999).

Price argues that the government failed to prove conspiracy because the evidence showed, at best, a buyer-seller relationship with the confidential informant.  To establish a drug conspiracy, the government must prove beyond a reasonable doubt: "(1) an agreement to violate drug laws;

Case No. 17-6365, *United States v. Price*

(2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009). True, "a 'buyer-seller relationship' is not enough to make someone a participant in a drug conspiracy," *United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004), but here we have much more than that. The government presented evidence of Price's repeat purchases from his supplier in Atlanta, the large quantity of drugs recovered from his apartment, and the "front" of drugs he received from his supplier, all of which we have held sufficient to support a conspiracy, defeating Price's argument on this point. *See Gunter*, 551 F.3d at 482–83 (repeat purchases and large volume); *United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003) (same); *Henley*, 360 F.3d at 514 ("fronting" drugs).

### B. Drug Quantity Calculation

Price next argues that the sentencing court erred by including the 135.25 grams of untested, "visually consistent" rock-like substance in calculating that 283.62 grams were attributable to him. This court reviews a district court's drug quantity determination at sentencing for clear error. *United States v. Olsen*, 537 F.3d 660, 663 (6th Cir. 2008). In making this determination, "[t]he district court must set forth the evidence upon which it relies and make specific findings that are supported by a preponderance of the evidence." *United States v. Long*, 190 F.3d 471, 478 (6th Cir. 1999). "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Vasquez*, 352 F.3d 1067, 1070 (6th Cir. 2003) (alteration in original) (citation omitted).

Courts permit drug-quantity extrapolations based on random test samples where the government demonstrates an "adequate basis in fact for the extrapolation and that the quantity was determined in a manner consistent with the accepted standards of [reasonable] reliability." *United*

Case No. 17-6365, *United States v. Price*

*States v. Jackson*, 470 F.3d 299, 310–11 (6th Cir. 2006) (alteration in original) (citation omitted). "[S]ufficient indicia of reliability may be found where a preponderance of the evidence demonstrates that (1) a proper 'random' selection procedure was employed; (2) the chemical testing method conformed with accepted methodology; (3) the tested and untested samples were sufficiently similar in physical appearance; and (4) the tested and untested samples were contemporaneously seized at the search scene." *Id.* at 311 (alteration in original) (citation omitted). Put differently, "the overall margin of reliability in a drug-quantity approximation must be adequate to afford reasonable assurance that the defendant is not subjected to a guideline sentence . . . greater than warranted by the reliable evidence." *Id.*

Price's argument rests entirely on prong one: that the TBI analyst did not employ a random sampling procedure in determining which bags to test. But the government does not have to "produce expert statistical evidence on sampling techniques." *United States v. McCutchen*, 992 F.2d 22, 26 (3d Cir. 1993). "Rather, reasonable reliability is the touchstone of the determination." *Id.* Here, the analyst testified that she strictly followed TBI policy and procedure, and explained how and why she conducted specific tests. *See id.* (holding the method of testing sufficiently reliable where the chemist testified that the procedure followed "was the accepted methodology among the chemists working in the Philadelphia Police Department"); R. 132, PageID 1934–38, 1941–46.

After testing the first bag and determining the rock-like substance was in fact 111.20 grams of crack cocaine, she did not test the bags containing a "visually consistent" rock-like substance. And as she testified, had those bags "looked different in any way," she would have done so. R. 132, PageID 1944; *see Jackson*, 470 F.3d at 309–11 (upholding quantity determination where twelve of the eighteen bags seized were not sampled or weighed because they were visually similar

Case No. 17-6365, *United States v. Price*

in size and weight). Moreover, given the other facts present here—the chemical testing methods used, similarity in physical appearance, and contemporaneous seizure of the bags from Price's apartment—"the *overall margin* of reliability" adequately affords reasonable assurance that Price's below-Guidelines sentence was "warranted by the reliable evidence." *Jackson*, 470 F.3d at 311 (emphasis added).

To buttress his position, Price notes that the jury found him responsible for less than 280 grams when reviewing the same evidence. It did so, however, under a more demanding standard, as the judge explained to Price when detailing his reasoning for the chosen sentence: "Now, the fact that no analysis was done may have been enough for the jury to make the finding it made; but here, as I said, I apply a preponderance of the evidence standard." R. 133, PageID 2121. Given the differing standards and evidence presented, the court did not clearly err in determining the drug quantity attributable to Price.

**C. Attorney Morelock's Motion to Withdraw and Price's Oral Motion for New Counsel**

Finally, Price claims the court erred by denying his counsel's motion to withdraw and his own oral motion for new counsel. We review the denial of these motions for abuse of discretion. *United States v. Mack*, 258 F.3d 548, 555–56 (6th Cir. 2001). In doing so, we generally must consider: "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *Id.* at 556. "[W]hen the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009) (alteration in original) (citation omitted).

Case No. 17-6365, *United States v. Price*

Each of these factors cuts against Price. First, both motions came on the eve of trial—Morelock's eight days before, Price's just six. *See United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (finding this factor did not support a claim that the court abused its discretion when the defendant's request came approximately one and a half months before trial); *United States v. Watson*, 620 F. App'x 493, 501 (6th Cir. 2015) (same when nineteen days); *United States v. Fonville*, 422 F. App'x 473, 480 (6th Cir. 2011) (same when twenty-two days). Granting such a request would have certainly required a last-minute continuance. *See Vasquez*, 560 F.3d at 467.

As to the second factor, the court inquired thoroughly and—after hearing testimony from multiple parties and questioning Price about the complaints he had regarding Morelock—explained its denial of each request, finding Price's grievances unfounded or unrealistic. *See Watson*, 620 F. App'x at 501–02. The court noted that, to support his complaints, Price could not point to witnesses who should have been but were not interviewed, to documents or investigative leads that could have been but were not pursued, or to specific motions that should have been but were not filed.

Nor did the conflict between Price and Morelock result in a total lack of communication that prevented an adequate defense. The court noted that the "trust issue" between them was, to a large extent, attributable to Price's "recalcitrance and . . . unwillingness to provide [counsel] with requested information." R. 130, PageID 1695; *see Vasquez*, 560 F.3d at 467–68 (holding this type of conduct weighed against the defendant on this factor); *Watson*, 620 F. App'x at 502 (same). Additionally, Morelock's representations convinced the court that she was "prepared for this trial" and had "in fact done everything she could to prepare" for it. R. 130, PageID 1696.

Last, the public's interest in the prompt and efficient administration of justice also supports denying the motions. The court weighed this factor and explained that it had no "confidence that

Case No. 17-6365, *United States v. Price*

replacing Ms. Morelock with another lawyer would resolve [the] problem." R. 130, PageID 1697. In fact, under questioning from the court, Price could not give any reason why another attorney would be better prepared to try his case than Morelock. Moreover, the court expressed concern "that this may in fact be a ploy on Mr. Price's part in order to delay this case that's almost a year old even further." R. 130, PageID 1697. Because none of the four *Mack* factors favor Price's position, we uphold the district court's judgment.

### III.

We AFFIRM.